# EXHIBIT A



**null / ALL**
**Transmittal Number: 20200192**
**Date Processed: 08/07/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Kelly Carlin<br>Signature Healthcare, LLC<br>12201 Bluegrass Pkwy<br>Louisville, KY 40299-2361 |

| | |
|---|---|
| **Entity:** | LP O Holdings, LLC<br>Entity ID Number  3412189 |
| **Entity Served:** | LP O Holdings, LLC |
| **Title of Action:** | Kennette Reed, as Surviving Spouse and Administrator of the Estate of Edd Lee Reed vs. Eastside Medical Center, Inc. |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Wrongful Death |
| **Court/Agency:** | Gwinnett County State Court, GA |
| **Case/Reference No:** | 19-C-05322-S4 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 08/05/2019 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Camille Godwin<br>404-577-8111 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

E-FILED IN OFFICE - NN
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**19-C-05322-S4**
7/23/2019 3:11 PM

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

CLERK OF STATE COURT

**Kennette Reed as Surviving**

**Spoud and Administrator**

**of the Estate of Edd Lee Reed**

CIVIL ACTION
NUMBER: 19-C-05322-S4

PLAINTIFF

VS.

**Eastside Medical Center, Inc.;**

**LP Atlanta, LLC d/b/a/ Signature**

**Healthcare of Atlanta, Et al.**

DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT: *L P O Holdings, LLC*

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Camille Godwin
Eric J. Hertz, PC
8300 Dunwoody Place, Suite 210
Atlanta, Georgia 30350

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _23rd_ day of **July**, 20**19**.

Richard T. Alexander, Jr.,
Clerk of State Court

By _____ Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

CLERK OF STATE COUR
GWINNETT COUNTY, GEORGI
**19-C-05322-S**
**7/24/2019 2:08 PI**

CLERK OF STATE COUR

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| KENNETTE REED, as Surviving Spouse and Administrator of the Estate of EDD LEE REED, deceased, <br><br>     Plaintiff, <br><br> v. <br><br> EASTSIDE MEDICAL CENTER, INC.; LP ATLANTA, LLC, d/b/a SIGNATURE HEALTHCARE OF BUCKHEAD; SIGNATURE HEALTHCARE CLINICAL CONSULTING SERVICES, LLC; SIGNATURE HEALTHCARE CONSULTING SERVICES, LLC; LP O HOLDINGS, LLC; JOHN DOES (1-5); and ABC CORPORATIONS (1-5), <br><br>     Defendants. | CIVIL ACTION <br><br> FILE NO. 19-C-05322-S4 <br><br><br> **JURY TRIAL DEMANDED** |

---

### AMENDED COMPLAINT

---

KENNETTE REED, as Surviving Spouse and as Administrator of the Estate of EDD LEE REED, deceased, by and through the undersigned counsel, and files this Complaint against Defendants EASTSIDE MEDICAL CENTER, INC.; LP ATLANTA, LLC; SIGNATURE HEALTHCARE CLINICAL CONSULTING SERVICES, LLC; SIGNATURE HEALTHCARE CONSULTING SERVICES, LLC; LP O HOLDINGS, LLC; JOHN DOES (1-5); AND ABC CORPORATIONS (1-5) ("Defendants"), showing the Court the following:

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Kennette Reed is the Surviving Spouse of Edd Lee Reed. Plaintiff seeks to recover for the wrongful death of Edd Lee Reed in her capacity as Surviving Spouse.

2.

Plaintiff Kennette Reed is the Administrator of the Estate of Edd Lee Reed. Plaintiff seeks to recover for claims arising in tort in her capacity as Administrator.

3.

Defendant EASTSIDE MEDICAL CENTER, INC. is a foreign corporation, registered to do business in Georgia. EASTSIDE MEDICAL CENTER, INC. owns, operates, and manages the hospital known as Eastside Medical Center located at 1700 Medical Way, Snellville, Gwinnett County, Georgia 30078. Service upon EASTSIDE MEDICAL CENTER, INC., can be made on its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia 30046.

4.

Defendant LP ATLANTA, LLC is a foreign limited liability company, registered to do business in Georgia. Service upon Defendant LP ATLANTA, LLC can be made on its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Gwinnett County, Georgia 30092.

5.

Defendant SIGNATURE HEALTHCARE CONSULTING SERVICES, LLC is a foreign limited liability company, registered to do business in Georgia. Service upon Defendant SIGNATURE HEALTHCARE CONSULTING SERVICES, LLC can be made on its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Gwinnett County, Georgia 30092.

6.

Defendant SIGNATURE HEALTHCARE CLINICAL CONSULTING SERVICES, LLC

2

is a foreign limited liability company, registered to do business in Georgia. Service upon Defendant SIGNATURE HEALTHCARE CLINICAL CONSULTING SERVICES, LLC, can be made on its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Gwinnett County, Georgia 30092.

7.

Defendant LP O HOLDINGS, LLC is a foreign limited liability company, registered to do business in Georgia. Service upon Defendant LP O HOLDINGS, LLC can be made on its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Gwinnett County, Georgia 30092.

8.

At all material times, the skilled nursing facility known as SIGNATURE HEALTHCARE OF BUCKHEAD (the "Facility"), located at 54 Peachtree Park Drive NE, Atlanta, Fulton County, Georgia 30309 was owned, operated, and/or managed by Defendants LP ATLANTA, LLC; SIGNATURE HEALTHCARE CLINICAL CONSULTING SERVICES, LLC; SIGNATURE HEALTHCARE CONSULTING SERVICES, LLC; and LP O HOLDINGS, LLC (collectively, the "Signature Defendants").

9.

The Signature Defendants were responsible for the provision of residence, care, treatment, convalescent, rehabilitation, and/or other services to Edd Lee Reed during his admission at Signature Healthcare of Buckhead.

10.

Defendants performed and/or controlled the operation of the Facility by, among other acts: a) providing management, operation, or administrative services; b) hiring or firing of management

3

and/or staff; c) controlling the Facility's budget and resource allocation; d) providing direct care, treatment, and/or services to the Facility's residents; e) making decisions regarding the care, treatment, and/or services provided to the Facility' residents; and f) adopting, implementing, and/or enforcing the policies and procedures for the Facility.

11.

The Signature Defendants were responsible for ensuring that the activities and operations of the Facility complied with all applicable state and federal laws and regulations pertaining to the Facility.

12.

Signature Healthcare of Buckhead was a participant in the Medicare and Medicaid programs and therefore was required to comply with all applicable state and federal laws and regulations pertaining to participants in these programs.

13.

Defendants ABC CORPORATIONS 1-5 and JOHN DOES 1-5 are entities and individuals whose true names or capacities are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend her Complaint to show said Defendants' true names when such have been ascertained.

14.

Plaintiff alleges that JOHN DOES 1-5, at all times relevant to this Complaint, were employees, actual agents, or apparent agents of Defendants, were acting incident to and within the course and scope of their employment or agency with Defendants, and were responsible for the care and treatment of Edd Lee Reed.

4

15.

Plaintiff alleges that ABC CORPORATIONS 1-5 owned, controlled, operated, or managed the Facility or Eastside Medical Center and were responsible for the services, care, and treatment provided to Edd Lee Reed.

16.

Defendants are subject to the jurisdiction of this Court.

17.

This cause of action originated in Gwinnett County, Georgia, and venue is therefore proper in this Court against Defendants pursuant to O.C.G.A. § 14-2-510(b)(3) and O.C.G.A. § 9-10-31.

18.

The Signature Defendants are directly liable by virtue of their own conduct for the wrongful acts detailed herein. The Signature Defendants are also vicariously or indirectly liable and responsible for the wrongful conduct detailed herein under one or more of the following alternative legal theories:

a.   ***Alter Ego***: At all times material to this lawsuit, the Signature Defendants were *alter egos* of one another.  The Signature Defendants conducted the business of these entities, including Signature Healthcare of Buckhead, as if they were one by commingling them on an interchangeable basis or confusing separate properties, records, or control.  Furthermore, Signature Healthcare of Buckhead was a subsidiary, affiliate, and/or alter ego of the Signature Defendants. The management and operations of Signature Healthcare of Buckhead were so assimilated within Defendants that Signature Healthcare of Buckhead was simply a name through which the Signature Defendants conducted their business. The Signature Defendants dominated and controlled the operations of Signature Healthcare of Buckhead, and any assertions by Defendants

5

that each was a separate corporate enterprise with an independent and separate existence is a sham and part of a scheme to perpetrate fraud, promote injustice, and evade existing legal and fiduciary obligations.

b.  ***Agency***: At all times material to this lawsuit, the Signature Defendants acted as agents for one another and each ratified or authorized the acts or omissions of the other.

c.  ***Amalgamation of Interests***: The Signature Defendants each remain liable for the acts and omissions of the other because the Signature Defendants are and have been operating as an amalgamation of interests creating a blurred corporate identify through an integrated enterprise and/or joint venture in the establishment, operation, management, and control of Signature Healthcare of Buckhead. The Signature Defendants shared a common purpose in establishing, operating, managing, controlling Signature Healthcare of Buckhead and combined their property and labor in the Facility for the purpose of making a profit and to blur the legal distinction between the entities and their activities.

## BACKGROUND

### 19.

On 07/29/17, Mr. Reed suffered a right MCA stroke which required his hospitalization at Eastside Medical Center from 07/29/17 through 09/05/17. During this hospitalization, he required intubation with ventilator support and placement of a feeding tube.

### 20.

At the time of his admission to Eastside Medical Center on 07/29/17, Mr. Reed had no documented skin breakdown. However, during his hospitalization he developed a sacral pressure ulcer and several areas of non-pressure related skin breakdown.

6

21.

The skin breakdown not caused by pressure was only inconsistently and sporadically documented, but included right arm blisters, a right shin laceration, bruises to the left arm, an umbilical wound, breakdown to a surgical area status post supra-pubic catheter insertion on 08/18/2017, and skin tear to his right posterior buttock documented on 09/02/17.

22.

On 09/04/2017 at 0830, the day before he was discharged from Eastside Medical Center, a sacral pressure wound was documented for the first time as an "unstageable pressure injury, tissue type score of 6 and unable to calculate the size of the wound." The next note related to this wound appears on 09/04/2017 at 1853: "Patient has superficial wound on right buttocks and stage II pressure ulcer on sacrum. Picture was taken and placed in chart. Dressing changed and wound care consult ordered and special mattress ordered." The sacral wound was now documented as a Stage II.

23.

On 09/05/2017 at 0800, the Shift Assessment note documents the sacral wound is now a Stage 3 Pressure injury on the sacrum. At 1153 on the same date, nursing notes document that the wound care RN was notified and she would see him that afternoon. At 1239 on 09/05/2017, the notes indicated that he was transferred to an air mattress.

24.

A Wound Care Center Note at 1608 on 09/05/17 documented a wound consult for impaired skin integrity. In addition to documenting open blisters on his upper right arm, this consult described the right buttock wound as a partial thickness wound measuring 4.5 x 5 x 0.1 cm,

draining serosanguinous drainage and also described a coccyx wound as now a stage 3 wound measuring 2 cm x 2.3 cm x 0.3.

25.

On 09/05/17, Mr. Reed was discharged from Eastside Medical Center and admitted to Signature Healthcare of Buckhead, a skilled nursing facility.

26.

Signature's nursing assessment performed on admission, although incomplete, described blisters to lower extremity, an open area to his right buttock, and an open area to his sacrum. A 09/07/17 wound care note described a stage II wound to his coccyx and an unstageable area to his sacrum measuring 2 cm x 2 cm with an unknown depth. A prealbumin level was recommended at this time, but not completed.

27.

The 09/14/17 wound care note indicated the coccyx wound was now resolved, but the sacrum wound remained unstageable, measuring 2 cm x 1.7 cm, with unknown depth. No wound care note was completed for 09/21/17.

28.

The 09/20/17 nursing progress report described Mr. Reed as being very confused and yelling out in pain. The note stated that a UA/CS was drawn, but there was no order for this draw and the laboratory reported that the specimen was insufficient to run the test. A subsequent specimen was obtained on 09/21/17 and was positive for a urinary tract infection.

29.

Notwithstanding this significant change in condition, followed by a temperature of 100.2 noted on 09/23/17 by nursing, Mr. Reed was discharged home on 09/24/17. A 09/22/17 social

services note acknowledged that they had been unable to arrange for home health assistance prior to discharge.

30.

On 09/25/17, Mr. Reed was transported by ambulance to Gwinnett Medical Center. In the emergency department, he was noted to have a temperature of 103 degrees, to be hypotensive requiring fluids and eventually required Levophed to support blood pressure. Mr. Reed died while in the intensive care unit on 09/26/17 at 8:26 a.m. His discharge diagnoses included septic shock, necrotizing fasciitis/Fournier's Gangrene, clostridium difficile, acute kidney injury, high-anion gap metabolic acidosis, atrial fibrillation with rapid ventricular response, and multi organ failure. His death certificate lists his cause of death as Necrotizing Fascitis Fournier's Gangrene, due to or as a consequence of Clostridium Difficile Colitis, due to or as a consequence of Septic Shock, due to or as a consequence of Multisystem Organ Failure.

31.

Edd Lee Reed's injuries and death were directly and proximately caused by Defendants' negligence.

**COUNT ONE**
**PROFESSIONAL NEGLIGENCE AGAINST EASTSIDE MEDICAL CENTER, INC.**

32.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 17 and 19 through 31 above if fully set forth herein.

33.

Pursuant to the requirements of O.C.G.A. § 9-11-9.1, Plaintiff attaches as Exhibit "A" the expert Affidavit of Suzanne Frederick, RN, as to the care and treatment provided by Eastside

9

Medical Center, Inc. This affidavit is incorporated by reference as if fully set forth herein and sets forth at least one negligent act or omission related to the care and treatment of Edd Lee Reed by Eastside Medical Center by and through their employees acting in the course and scope of their employment, which negligent acts or omissions proximately caused or contributed to the injuries and/or death of Mr. Reed.

34.

Mr. Reed was a patient at Eastside Medical Center from 07/29/17 through 09/05/17. The standard of care required Eastside Medical Center and its healthcare providers to exercise that degree of skill and care ordinarily employed by acute care hospitals and providers generally under the same or similar conditions and like surrounding circumstances in the care and treatment of patients such as Mr. Reed.

35.

Defendant Eastside Medical Center breached the standard of care and was negligent in their care and treatment of Edd Lee Reed by, among other acts and omissions:

(a)     Failure to appropriately and adequately assess Mr. Reed's risk for skin breakdown and infection;

(b)     Failure to implement adequate interventions to address Mr. Reed's risk for skin breakdown and to prevent and minimize skin breakdown, including timely interventions to relieve and minimize pressure;

(c)     Failure to provide appropriate care and treatment to prevent avoidable injuries to Mr. Reed during provision of treatment and services;

(d)     Failure to keep Mr. Reed's family and physicians informed of Mr. Reed's condition and status;

10

(e)   Failure to maintain complete and accurate records of Mr. Reed's condition, status, care, and treatment.

36.

The professional negligence of Eastside Medical Center and its staff in breaching the standard of care, as set forth above and in Exhibit "A" attached hereto, caused Mr. Reed to suffer injuries and damages, including physical and mental pain and suffering, medical bills and costs, funeral expenses, and death.

**COUNT TWO**
**ORDINARY NEGLIGENCE AS TO EASTSIDE MEDICAL CENTER, INC.**

37.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 17 and 19 through 31 above if fully set forth herein.

38.

Eastside Medical Center had a duty to exercise reasonable care in their provision of services and custodial care to Edd Lee Reed.

39.

Eastside Medical Center breached their duty to exercise reasonable care in their provision of services to Edd Lee Reed. Their failure to exercise reasonable care includes, but is not limited to, the following:

a)   Failing to exercise reasonable care to keep Mr. Reed safe from harm and to avoid injury to his person;

b)   Failing to hire, adequately screen, and train adequate and appropriate personnel to monitor, supervise, care for, and/or treat residents, including Mr. Reed;

11

c)    Retention and assignment of unfit or unqualified staff to monitor, supervise, care for, and/or treat residents, including Mr. Reed;

d)    Failure to establish, implement, and/or enforce appropriate safety, training, staffing, and fundamental policies and procedure to prevent harm to residents, including Mr. Reed and avoid the known consequences of inadequate care;

e)    Failing to ensure that the staff functioned within the scope of their professional practice, education, and training to meet the needs of residents, including Mr. Reed;

f)    Failure to investigate and correct known systemic breakdowns in the delivery of care and services at the facility to avoid harm to residents, including Mr. Reed;

g)    Failing to provide appropriate care and services in accordance with Mr. Reed's rights and needs; and

h)    Violating state and federal statutes and regulations with which the Signature Defendants were required to comply.

40.

As a direct and proximate result of the negligence described herein, Edd Lee Reed suffered both general and special damages, including but not limited to, pain and suffering, medical, funeral, and other necessary expenses, and death.

## COUNT THREE
## PROFESSIONAL NEGLIGENCE AGAINST SIGNATURE DEFENDANTS

41.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 above if fully set forth herein.

12

42.

Pursuant to O.C.G.A. § 9-11-9.1, Plaintiff attaches as Exhibit "B" the expert Affidavit of Patricia Roan, RN, as to the care and treatment provided by the Signature Defendants. This affidavit is incorporated by reference as if fully set forth herein, and sets forth at least one negligent act or omission related to the care and treatment of Edd Lee Reed by Defendants, by and through their employees acting in the course and scope of their employment, which proximately caused or contributed to the injuries and/or death of Mr. Reed.

43.

The standard of care required the Signature Defendants to exercise that degree of skill and care ordinarily employed by skilled nursing facilities generally under the same or similar conditions and like surrounding circumstances in the care and treatment of Mr. Reed.

44.

The Signature Defendants breached the standard of care and were negligent in their care and treatment of Edd Lee Reed. Their professional negligence includes, but is not limited to, the following:

a) Failure to appropriately and timely assess and evaluate Mr. Reed's condition and needs, including his risk for complications related to urinary tract infection and wound infection;

b) Failure to provide timely required interventions and treatment to address Mr. Reed's condition and needs;

c) Failure to timely inform Mr. Reed's physician and family of significant changes in condition;

d) Failure to maintain complete and accurate records of care and services provided for

13

Mr. Reed;

e)      Failure to provide appropriate discharge planning and ensure a safe discharge from services; and

f)      Violating state and federal statutes and regulations with which the Signature Defendants were required to comply.

45.

The failure of the Signature Defendants and their nurses, nurses' aides, certified nursing assistants, and other staff involved in the care of Mr. Reed to adhere to the standard of care as outlined above resulted in significant injuries and pain and suffering to Mr. Reed, including development of sepsis and ultimately death.

46.

As a direct and proximate result of the professional negligence described herein and in the affidavit attached hereto as Exhibit "B", Edd Lee Reed suffered both general and special damages, including but not limited to, physical and mental pain and suffering, medical, funeral, and other necessary expenses, and death.

## COUNT FOUR
## ORDINARY NEGLIGENCE AS TO SIGNATURE DEFENDANTS

47.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 above if fully set forth herein.

48.

The Signature Defendants had a duty to exercise reasonable care in their provision of

14

services and custodial care to Edd Lee Reed.

49.

The Signature Defendants breached their duty to exercise reasonable care in their provision of services to Edd Lee Reed. Their failure to exercise reasonable care includes, but is not limited to, the following:

i) Failing to exercise reasonable care to keep Mr. Reed safe from harm and to avoid injury to his person;

j) Failing to hire, adequately screen, and train adequate and appropriate personnel to monitor, supervise, care for, and/or treat residents, including Mr. Reed;

k) Retention and assignment of unfit or unqualified staff to monitor, supervise, care for, and/or treat residents, including Mr. Reed;

l) Failure to establish and implement appropriate facility and corporate budgeting policies and practices which were consistent with the needs of residents of the facility, including Mr. Reed;

m) Failure to establish, implement, and/or enforce appropriate safety, training, staffing, and fundamental policies and procedure to prevent harm to residents, including Mr. Reed and avoid the known consequences of inadequate care;

n) Failing to ensure that the staff functioned within the scope of their professional practice, education, and training to meet the needs of residents, including Mr. Reed;

o) Failure to investigate and correct known systemic breakdowns in the delivery of care and services at the facility to avoid harm to residents, including Mr. Reed;

p) Failing to provide appropriate care and services in accordance with Mr. Reed's rights and needs; and

q)      Violating state and federal statutes and regulations with which the Signature
        Defendants were required to comply.

50.

At all times material to this action, the Signature Defendants were fully aware that the delivery of care and custodial services to residents in the Facility, including Edd Lee Reed, required provision of adequate and appropriate staffing in the Facility to meet the needs of residents.

51.

Despite this knowledge, the Signature Defendants entered into a continuing course of negligent conduct, creating, implementing and enforcing dangerous operational budgets, practices, and policies at the Facility which deprived residents, including Edd Lee Reed, of safe, adequate, and essential care and resources to meet their needs.

52.

At all material times, the Signature Defendants had a duty to allocate resources and exercise fiscal policies with reasonable care in their operation, management, and/or ownership of the Facility, so as to prevent the infliction of harm on residents of the Facility, including Edd Lee Reed.

53.

The Signature Defendants breached their duty by failing to allocate sufficient financial and operational resources to the Facility, thereby causing harm to residents, including Edd Lee Reed.

54.

As a result of the Signature Defendants' conduct, dependent residents, including Edd Lee Reed, suffered repeated and ongoing neglect and were subjected to dangerous conditions at the

16

Facility.

55.

As a direct and proximate result of the negligence described herein, Edd Lee Reed suffered both general and special damages, including but not limited to, pain and suffering, medical, funeral, and other necessary expenses, and death.

**COUNT FIVE**
**GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE**
**FACILITIES (O.C.G.A. § 31-8-100 et seq.) AGAINST SIGNATURE DEFENDANTS**

56.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 and 42 through 55 above if fully set forth herein.

57.

At all material times, Signature Healthcare of Buckhead was a "long-term care facility" as that term is defined under O.C.G.A. §31-8-102(3).

58.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. §31-8-100 et seq., and its accompanying regulations, which sets out requirements for those providing care, treatment, and services to residents of long-term care facilities in this state.  In particular, O.C.G.A. §31-8-108(a) requires that residents of long-term care facilities receive care, treatment, and services that are adequate and appropriate and which must be provided with reasonable care and skill and in compliance with all applicable laws and regulations and with respect for the resident's personal dignity, among other requirements.

17

59.

The Signature Defendants violated the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and its accompanying regulations. The acts and omissions constituting violations of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and its accompanying regulations include, but are not limited to, the following:

a) The Signature Defendants failed to administer the facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental, and psychosocial wellbeing of Edd Lee Reed;

b) The Signature Defendants failed to implement protocols to protect Mr. Reed from neglect;

c) The Signature Defendants failed to operate and provide services to Mr. Reed in compliance with law and acceptable professional standards and principles that apply to professionals providing said services;

d) The Signature Defendants failed to provide or arrange services for Mr. Reed that met professional standards of quality;

e) The Signature Defendants failed to maintain an adequate nursing staff to provide for Mr. Reed's needs;

f) The Signature Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Reed;

g) v failed to maintain complete and accurate clinical records related to the care and treatment of Mr. Reed in accordance with accepted professional standards and practices;

h) The Signature Defendants failed to properly train and supervise the nursing staff to

18

The Signature Defendants the appropriate care, treatment and services that Mr. Reed needed;

i)   The Signature Defendants failed to follow physician's orders with respect to the care and treatment that Mr. Reed needed; and

j)   The Signature Defendants failed to maintain a comprehensive and accurate assessment of Mr. Reed's medical needs.

60.

Pursuant to O.C.G.A. §31-8-126(a), Plaintiff has a cause of action for damages against the Signature Defendants as a result of said Defendants' violations of the rights granted under the *Georgia Bill of Rights for Residents of Long Term Care Facilities*.

61.

The Signature Defendants' violations of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and its accompanying regulations directly and proximately led to the injury, pain and suffering, additional bills and expenses, and death of Edd Lee Reed.

**COUNT SIX**
**VICARIOUS LIABILITY UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR**
**AND ACTUAL OR APPARENT AGENCY**

62.

Plaintiff re-alleges and incorporates by reference all paragraphs above if fully set forth herein.

63.

At all times relevant to this Complaint, John Does 1-5 and the nurses, certified nurse aides and other persons who provided services, care, and treatment to Edd Lee Reed while he was a resident at the Facility were the actual or apparent agents of the Signature Defendants.

19

64.

At all times relevant to this Complaint, John Does 1-5 and the nurses, certified nurse aides and other persons who provided services, care, and treatment to Edd Lee Reed while he was a patient at Eastside Medical Center were the actual or apparent agents of Defendant Eastside Medical Center, Inc.

65.

At all times relevant to this Complaint, John Does 1-5 and the nurses, certified nurse aides and other persons who provided services, care, and treatment to Edd Lee Reed while he was a resident at the Facility were acting incident to and within the scope and course of their employment and/or actual or apparent agency with the Signature Defendants.

66.

At all times relevant to this Complaint, John Does 1-5 and the nurses, certified nurse aides and other persons who provided services, care, and treatment to Edd Lee Reed while he was a patient at Eastside Medical Center were acting incident to and within the scope and course of their employment and/or actual or apparent agency with Defendant Eastside Medical Center, Inc.

67.

Under the doctrine of *respondeat superior*, vicarious liability, actual agency and/or apparent agency, the Signature Defendants are liable for the ordinary and professional negligent acts and omissions of their employees and agents, including but not limited to John Does 1-5 and the nurses, certified nurse aides, and other persons who provided services, care, and treatment to Edd Lee Reed while he was a resident at the Facility.

68.

Under the doctrine of *respondeat superior*, vicarious liability, actual agency and/or apparent

agency, the Defendant Eastside Medical Center, Inc., is liable for the ordinary and professional negligent acts and omissions of their employees and agents, including but not limited to John Does 1-5 and the nurses, certified nurse aides, and other persons who provided services, care, and treatment to Edd Lee Reed while he was a patient at Eastside Medical Center.

69.

All ordinary and professional negligent acts and omissions of Defendants and their employees, agents, and staff, including but not limited to John Does 1-5 and the nurses, certified nurse aides and other persons who provided services, care, and treatment to Edd Lee Reed while he was a resident at the Facility and a patient at Eastside Medical Center operated together and concurrently and proximately brought about Mr. Reed's injuries and death.

70.

As a direct and proximate result of the negligence described herein, Edd Lee Reed suffered both general and special damages, including but not limited to, pain and suffering, medical, funeral, and other necessary expenses, and death.

## COUNT SEVEN
## WRONGFUL DEATH

71.

Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

72.

Edd Lee Reed died on 09/26/17 as a direct and proximate result of the negligent acts and omissions of the Defendants as described in this Complaint, individually and/or jointly, and

including both acts of professional negligence and ordinary negligence.

73.

Wherefore, Plaintiff Kennette Reed, as Surviving Spouse of Edd Lee Reed, seeks to recover

for the full value of the life of Edd Lee Reed under Georgia's wrongful death statutes due to the

negligence of all the Defendants to this action as described above and as described in Exhibits "A"

and "B" attached hereto.

## COUNT EIGHT
## LOSS OF CONSORTIUM

74.

Plaintiff realleges and incorporates by reference the allegations above as if fully set forth

herein.

75.

At all times relevant to the incidents giving rise to this Complaint, Edd Lee Reed and

Kennette Reed were married as husband and wife.  As a result of the injuries sustained by Edd Lee

Reed, Plaintiff Kennette Reed experienced a profound loss of the society, companionship, affection,

and services of her husband. By reason of the foregoing, Plaintiff is entitled to recover from the

Defendants general damages for loss of consortium proximately resulting from this incident as

alleged herein before.

## COUNT NINE
## PUNITIVE DAMAGES AGAINST SIGNATURE DEFENDANTS

76.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31, 42 through 70,

and 74 through 75 above if fully set forth herein.

77.

The Defendants' actions as described above and as described in Exhibit "B"in failing to sufficiently and appropriately staff their facilities to meet the needs of its residents and patients, including the needs of Edd Lee Reed, and the systemic failure to use their resources effectively and efficiently to maintain the highest practicable physical, mental, and psychosocial well-being of residents, including Mr. Reed, showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiff to recover punitive damages against the Defendants in an amount to be determined, which will, in the enlightened conscience of impartial jurors, punish, penalize, and deter Defendants from repeating their conduct.

WHEREFORE, Plaintiff prays that:

(a)     Summons and a copy of this Complaint be served on Defendants;

(b)     As to Plaintiff's claims that amount to professional negligence, Plaintiff demands judgment in excess of $10,000.00;

(c)     Plaintiff recover against Defendants for the full value of the life of Edd Lee Reed;

(d)     Judgment be granted against the Signature Defendants in favor of Plaintiff for exemplary/punitive damages pursuant to O.C.G.A. § 51-12-5.1 in an amount to be determined by the enlightened conscience of a fair and impartial jury;

(e)     As to all remaining claims, Plaintiff recover against Defendants for general damages, special damages, and compensatory damages, including, but not limited to, physical and mental pain and suffering, medical bills, and funeral costs in an amount to be proven at trial;

23

(f)   Plaintiff have a TRIAL BY JURY; and

(g)   Plaintiff be granted any and all further relief as is just and proper.

DATED this 24th day of July 2019.

**ERIC J. HERTZ, PC**

*/s/ Camille Godwin*

_____

CAMILLE GODWIN
Georgia Bar Number 298650
Camille@hertz-law.com

*Counsel for Plaintiff*

8300 Dunwoody Pl. Suite 210
Atlanta, GA 30350
(404) 577-8111
Fax: (404) 577-8116

24

STATE OF TEXAS
COUNTY OF McLENNAN
AFFIDAVIT OF SUZANNE FREDERICK

COMES NOW before me, an officer authorized to administer oaths, and who, after being duly sworn, deposes and says:

1. My name is Suzanne Frederick, and I am a resident of Waco, Texas.

2. I have been a registered nurse for over thirty years. I received my Bachelor of Science degree in Nursing from The University of Mary Hardin-Baylor in May 1983; a Masters in Nursing Administration from the University of Texas at Arlington in May 1996; and certification as a wound nurse from the Wound, Ostomy, Continence Nurses Society in 2007. My education and experience are further detailed in my curriculum vitae, which is attached as an exhibit to this Affidavit.

3. I have been continuously licensed to practice professional nursing by the appropriate regulatory agency in Texas since 1983 and have been engaged in active professional nursing practice since that time in acute care and since 1996 in long-term care facilities.

4. Since 1999, I have worked on assignments as a consultant for the United States Department of Justice assessing and investigating nursing homes to determine compliance with regulations and standards of care, as well as providing consultation and follow-up services to assist in the improvement of quality of care.

5. Since 2003, I have been employed as a Clinical Nursing Instructor at McLennan Community College, where I teach nursing students. Included among the topics which I teach such students are assessment, care planning, interventions, evaluation and oversight of patients and residents of acute and long-term care facilities, including

1

STATE OF TEXAS
COUNTY OF McLENNAN
AFFIDAVIT OF SUZANNE FREDERICK

COMES NOW before me, an officer authorized to administer oaths, and who, after being
duly sworn, deposes and says:

1.  My name is Suzanne Frederick, and I am a resident of Waco, Texas.

2.  I have been a registered nurse for over thirty years. I received my Bachelor of Science
    degree in Nursing from The University of Mary Hardin-Baylor in May 1983; a Masters in
    Nursing Administration from the University of Texas at Arlington in May 1996; and
    certification as a wound nurse from the Wound, Ostomy, Continence Nurses Society in
    2007.  My education and experience are further detailed in my curriculum vitae, which
    is attached as an exhibit to this Affidavit.

3.  I have been continuously licensed to practice professional nursing by the appropriate
    regulatory agency in Texas since 1983 and have been engaged in active professional
    nursing practice since that time in acute care and since 1996 in long-term care facilities.

4.  Since 1999, I have worked on assignments as a consultant for the United States
    Department of Justice assessing and investigating nursing homes to determine
    compliance with regulations and standards of care, as well as providing consultation and
    follow-up services to assist in the improvement of quality of care.

5.  Since 2003, I have been employed as a Clinical Nursing Instructor at McLennan
    Community College, where I teach nursing students.  Included among the topics which I
    teach such students are assessment, care planning, interventions, evaluation and
    oversight of patients and residents of acute and long-term care facilities, including

1

patients and residents at risk for skin breakdown and those who develop skin breakdown.

6. The opinions contained in this Affidavit are based upon my own knowledge, education and experience, and my review of the materials described below.

7. As a result of my background, training and experience in the acute care field, I am familiar with the standards of care applicable to acute care facilities similar to Eastside Medical Center and the standards of care required of the staff of such facilities, including, but not limited to, Registered Nurses, Licensed Practical Nurses, Nurse Aides, Patient Care Assistants/Techs, and other hospital staff.

8. As a result of having been regularly and continuously engaged in active practice of nursing from 1983 to the present, I have actual professional knowledge and experience in providing nursing care and oversight of nursing and custodial care to patients such as Eddie Reed while he was a patient at Eastside Medical Center from 07/29/17 –09/05/17. For greater than three of the last five years prior to the negligence and breaches of the standard of care described below, I was engaged in the active practice of nursing, as well as teaching such matters to nursing students while employed as a member of the faculty of an educational institution accredited in the teaching of the nursing profession.

9. I make this affidavit in support of an action to be filed, alleging among other things, negligence in the care and treatment of Eddie Reed.  My opinions contained in this affidavit are expressed as a nursing expert engaged in providing care in the acute care hospital environment and in facilities similar to Eastside Medical Center.  To date, I have reviewed the following materials related to Eddie Reed:

2

- Medical records from Eastside Medical Center from 07/29/17—09/05/17;

- Medical records from Signature Healthcare of Buckhead from 09/05/17—09/24/17; and

- Medical records from Gwinnett Medical Center from 09/25/17—9/26/17.

10. As used in this Affidavit, the term "standard of care" refers to that degree of care, skill, and diligence ordinarily employed by members of the health care profession generally under the same or similar conditions and like and surrounding circumstances.

11. Based on my review of the foregoing records, Mr. Reed's pertinent medical history is as follows:

- Eddie Reed was a seventy-six-year-old male who presented to Eastside Medical Center Emergency Room on 07/29/17, with left sided weakness of approximately one hour in duration.
- His past medical history included congestive heart failure, coronary artery disease, dementia, diabetes mellitus, and hypertension.
- His past surgical history included coronary artery by-pass graft and a pacemaker insertion.
- The History and Physical Examination by the physician documents that Mr. Reed had no gross skin abnormalities and was independent with ambulation prior to presenting to the Emergency Room. The physician noted on the HPI-Stroke/CVA report that he had not experienced any nausea/vomiting, difficulty walking, or changes in mental status over the last few days.
- Mr. Reed was treated in the ER and admitted for treatment and diagnosis of a right MCA stroke that resulted in a change in mental status, intubation with ventilator support, aphasia, left-sided weakness, and placement of a feeding tube.
- During his hospitalization, surgery consulted for gallbladder issues and abdominal complications.  Mr. Reed was a total care, bedbound patient and remained in the hospital until 09/05/17.

12. Mr. Reed's medical records from Eastside Medical Center indicate that no pressure injuries were present upon admission on 07/29/17.

3

13. Several wounds were documented inconsistently throughout the medical record that were not related to pressure injury.  These sporadic notes referred to right upper extremity blisters, a right shin laceration, bruises to the left upper arm, umbilical wound, and surgical area status post supra-pubic catheter insertion on 08/18/2017.  The nursing documentation in the medical record is very inconsistent related to these wounds.  There were many times where a wound was documented on a certain date, yet the following date contained no mention of the wound.  There were several times that no wounds were documented at the time of the next skin assessment and then the same wound would be documented on a later date.  This inconsistent and contrary documentation is a breach in the standard of care.  The documentation related to existing wounds, size, appearance, and progression of wound status was very inconsistent and did not meet the standard of care for acute care hospitals.  Clear and accurate records of a wound, pressure related or not, enable its progress to be determined so the appropriate treatment can be applied to obtain a positive outcome.  Complete and accurate wound documentation is a reflection of assessment, or lack thereof, and provides a means for the care team to review wound notes and appreciate the status and progression of wounds, ensuring continuity of care and appropriate treatment.

14. On 09/02/2017 at 2000, the Clinical Documentation Record shows a partial thickness skin tear to the right posterior buttock.  The wound was described as red/moist/smooth and shallow with a tissue type score of two.  On 09/04/2017 at 0830, the day before the patient was discharged from the hospital, a sacral pressure injury was documented for

4

the first time as an "unstageable pressure injury, tissue type score of 6 and unable to calculate the size of the wound." The note also documents that the pressure injury was not present upon admission to the facility. The fact that this pressure injury was first documented as unstageable indicates that nursing failed to provide adequate and timely skin care assessments, which is a breach in the standard of care.

15. The next note related to this wound appears on 09/04/2017 at 1853: "Patient has superficial wound on right buttocks and stage II pressure ulcer on sacrum. Picture was taken and placed in chart. Dressing changed and wound care consult ordered and special mattress ordered." The sacral pressure injury was now documented as a Stage II from a prior status of unstageable which was inappropriate.

16. On 09/05/2017 at 0800, the Shift Assessment note stated that the patient has a Stage 3 pressure injury on the sacrum, which was a different stage of wound severity again.

17. The Nurse Notes from 09/05/17 at 1153 state that the wound care RN was notified and stated that she would come to see the patient in the afternoon.

18. At 1239 on 09/05/2017, the notes indicated that he was transferred to an air mattress with assistance from the charge nurse.

19. At 1608 on 09/05/2017, the Wound Care Center Note indicates that a wound consult was completed for impaired skin integrity. The patient had numerous open blisters present on the right upper arm with red and healthy tissue, no drainage, no erythema or odor. Three small intact blisters were noted. A right buttock wound was documented as a partial thickness open wound measuring 4.5 x 5 x 0.1 cm, draining serosanguineous drainage small amount; and a coccyx wound (first note of a coccyx wound) stage 3

5

measuring 2 cm x 2.3 cm x 0.3. This wound was covered with fibrinous substance with minimal drainage. Santyl was recommended, cover with a moist 2 x 2 then dry gauze. Vigorous turning every two hours with low air loss mattress was to be ordered for the rehabilitation facility upon transfer.

20. The Discharge Summary from Eastside Medical Center documents that during Mr. Reed's admission to Eastside Medical Center and at the time of discharge from the facility he had developed a "decubitus ulcer on his back stage I to II and II to III in one place, but expends to II to III in coccyx." The physician further noted that wound care was consulted and suggested Santyl and other local treatment which will be going with the patient.

21. The wound care consult was not completed until 1608 on 09/05/2017 and the patient was discharged to Signature Healthcare of Buckhead at 1955 on 09/05/2017.

22. Care plan information was also reviewed in the Eastside Medical Center records and there was failure by the facility interdisciplinary staff to adequately care plan the patient's skin integrity risk, wound development and wound care interventions, which represents a breach in the standard of care.

23. A pressure injury occurs as a result of intense and/or prolonged pressure or pressure in combination with shear.

24. The physician and nursing documentation for Mr. Reed does not indicate any pressure injuries at the time of admission to the hospital. However, during Mr. Reed's admission and at the time of his discharge from the hospital he had developed several pressure

injuries on his back, buttocks and coccyx area of stage I, Stage II and Stage III, which
represented a breach in the standard of care.

25. The nurses knew that Mr. Reed was at risk for developing pressure injuries. Therefore,
he required comprehensive and careful assessments and interventions in order to
prevent the development and progression of avoidable skin breakdown.  The
prevention, development and deterioration of pressure injuries should have been of
major interdisciplinary concern while he was a patient in the hospital.  The records
reflected a failure to provide appropriate and consistent preventive care for Mr. Reed
especially consistent turning and repositioning. The development of Mr. Reed's
avoidable pressure injuries at Eastside Medical Center represents a breach in the
standard of care.

26. Mr. Reed was discharged to Signature Healthcare of Buckhead on 09/05/17, and then to
Gwinnett Medical Center on 09/25/17 and died on 09/26/17.  A review of the medical
records that are currently available indicates that Mr. Reed continued to suffer from the
progression of these pressure injuries until the time of his death.

27. The negligence and breaches in the standard of care at Eastside Medical Center from
07/29/17 through 09/05/17 resulted in the development of avoidable pressure injuries

28. It is my professional opinion, which I express within a reasonable degree of nursing
certainty, that the nursing care and treatment provided to Eddie Reed while a patient at
Eastside Medical Center from 07/29/17 through 09/05/17, was below the applicable
standard of care for acute care hospitals and nursing staff treating patients with the
same or similar conditions as Eddie Reed. Said negligence and substandard care directly

7

and proximately caused and contributed to the injuries and illnesses that Eddie Reed sustained.

29. This affidavit is by no means to be construed as an exhaustive recitation of all my opinions with regard to the care and treatment that Eddie Reed received while he was a patient at Eastside Medical Center. I reserve the right to supplement, amend or change these opinions as additional information is produced and provided for my review and evaluation.

FURTHER AFFIANT SAYETH NOT.

Suzanne Frederick, MSN, RN-BC, CWCN

Sworn to and subscribed before me
on this ___17th___ day of July 2019.

_____
Notary Public
My commission expires: ___12-28-19___

KIMBERLY F. LONGNECKER
Notary Public, State of Texas
Comm. Expires 12-28-2019
Notary ID 11829747

8

# SUZANNE FREDERICK, MSN, RN-BC, CWCN
## 260 Settlers Creek Trail
## Waco, Texas 76712
## (254) 715-8812


**EDUCATION**     University of Texas at Arlington.  Arlington, Texas.
Master of Nursing Administration. Graduation Date: May 1996.

University of Mary Hardin- Baylor.  Belton, Texas.
Bachelor of Science in Nursing. Graduation Date:  May 1983.

Wound Scope Program and Certification
Wound, Ostomy, Continence Nurses Society: 2007


**LICENSURE**     Professional Nurse Licensure in Texas


**CERTIFICATIONS**

Certified Wound Care Nurse, WOCN
Board Certified Gerontological Nurse
CCRN - Certified Critical Care Registered Nurse 1987-1994
ACLS - Advanced Cardiac Life Support – Provider; Past Instructor
PALS - Pediatric Advanced Life Support - Past Instructor
TNCC - Trauma Nursing Core Course


**EXPERIENCE**

2003 -          **McLennan Community College**
Present         **Clinical Nursing Instructor -** Teach nursing students primarily in clinical settings,
including nursing homes and hospitals.

2003 -          **University of Texas at Arlington**
2005            **Clinical Nursing Instructor –** Teach Nursing Administration classes at Graduate Level

1999 -          **United States Department of Justice**
Present         **Nursing Home Consultant –** Assess and investigate nursing homes to determine if
standard of care is being met.  Provide consultation and follow up to assist the facilities in
making improvements.

1996 -          **Hillcrest Baptist Medical Center, Waco, Texas     (Hospital)**
2004            **Nursing Supervisor -** Supervise nursing staff on part time basis on all units, work with
nursing staff in patient care decisions, develop and monitor nursing policy and
procedures and standards of care, supervise Code Blue Team, Trauma Team member in
E.R., JCAHO survey preparation, Nursing Education - present inservices on broad range
of topics for nursing staff including Critical Care Course and Orientation.

**Staff Nurse** - hospital wide.

1

**1996 -**
**2003**
**Regis/St. Elizabeth's Centers, Waco, Texas    (Nursing Home)**
**Subacute Program Director/Staff RN –**
Served as Director for eight month start-up phase during 1997- 1998 to oversee all aspects of operating a subacute unit in Long Term Care facility.  Provide nursing education to insure nursing competencies, develop policies and procedures, standards of care and insure compliance with regulations.  Part time as staff RN, assist with nurse staffing, patient assessments, MDS and Care Plans, nursing education, supervision and new projects.

**1996 -1999**
**Extra Step Home Health, the Wound Care Specialists, Waco, Texas -** Wound care specialty agency, Nursing education, Quality Improvement, patient care and administrative duties on part time basis.

**Synergy Healthcare -** Provide education through inservices and workshops to nurses in Long Term Care, Hospitals, Home Health, etc.

**1990-1996**
**Hillcrest Baptist Medical Center, Waco, Texas**
**Director, Critical Care Nursing & Respiratory Therapy**

Conduct overall management activities and coordination of two Intensive Care Units, one Telemetry Unit and Respiratory Care department including appx. 90 FTE's, patient population includes Pediatric through Geriatric; develop and enforce policies, procedures and standards of care, supervise orientation and continuing education process of all new staff; develop capital and operating budgets

**1987-1990**
**Hillcrest Baptist Medical Center, Waco Texas**
**Coordinator of Nurse Internship Program**

Plan, implement, coordinate and evaluate program; supervise approximately twenty new graduate nurses in all clinical areas including medical, surgical, emergency, critical care and oncology; instruct interns in classroom setting and at bedside in all clinical areas

> Geriatrics
> Medical-Surgical
> Surgical Intensive Care
> Pediatrics
> Emergency Department
> Cardio-Pulmonary Intensive Care

**Concurrent**
**1988-1990**
**Hillcrest Baptist Medical Center, Waco Texas**
**Critical Care Nurse Educator**

Conduct orientation program for new associates in critical care units; Co-coordinator of hospital wide Staff Development Program - Supervise seventeen unit staff developers in orientation and educational programs for individual nursing units; plan and present continuing education programs in critical care including annual courses for ICU, CCU and ER; Clinical educator for critical care nurses

**1988-1990**
**McLennan Community College, Waco Texas**
**Instructor - Certified Nursing Assistant Program**

Taught Nursing Assistant Program including clinical and didactic portions; approximately 80 hour course to prepare students to work in Nursing Homes and Hospitals; Course prepared students to seek Certified Nurse Aide status.

2

| | |
|---|---|
| 1986-87 | **Hillcrest Baptist Medical Center, Waco, Texas**<br>**Assistant Head Nurse/Head Nurse Intensive Care Unit** |

Supervise approximately forty associates in an 18-bed trauma, medical-surgical, pediatric ICU; establish and maintain effective staffing patterns; develop and implement policies and procedures; manage all budgetary aspects of unit

| | |
|---|---|
| 1983-86 | **Hillcrest Baptist Medical Center, Waco, Texas**<br>**Staff Nurse ICU. CCU and ER** |

**AFFILIATIONS**

Wound Ostomy and Continence Nurses Society
National League for Nursing (NLN)
American Geriatrics Society
Texas Geriatrics Society
Association for the Advancement of Wound Care
National Gerontological Nursing Association
American Association of Critical Care Nurses
Texas Hospital Association 1990-1996
Texas Organization of Nurse Executives 1990-1996
The Council on Alcohol & Drug Abuse - Board Member 1999 – 2001

**PUBLICATIONS**

Frederick, S. (2002). Geriatric Pain. In Iyre, Patricia (Ed.), Medical Legal Aspects of Pain and Suffering. Tucson, AZ: Lawyers & Judges.

3

STATE OF GEORGIA                    )
COUNTY OF                           )

### AFFIDAVIT OF PATRICIA ROAN MHA RN LNHA

Patricia Roan RN, MHA, LNHA being duly sworn, states and avers that the following

facts are true and correct:

1.

My name is PATRICIA ROAN RN, MHA, LNHA I am over the age of twenty-one

years, I suffer from no legal disabilities and I make this Affidavit under oath, subject to penalties

of perjury, and based upon my own personal knowledge and review of the medical records of

Eddie Reed as well as my own professional knowledge, education, training, and experience

outlined in my CV, attached hereto and incorporated herein by reference as Exhibit A.  I am

competent in all respects to testify regarding the matters set forth herein.

2.

I have been licensed and engaged in the active practice of nursing since 2005. I received

my Diploma in Nursing from Southern West Virginia Community and Technical College, my

Bachelors in Business Administration from Marshall University in 1993 and my Masters in

Healthcare Administration from Marshall University in 1996.

3.

I am licensed to practice nursing in West Virginia. I am also a licensed Nursing Home

Administrator in West Virginia. In addition to practicing as a registered nurse, my experience

includes serving as Director of Nursing Services, Nursing Home Administrator, and MDS

Coordinator.   At all times between April 2012 and current, I served as the Nursing Home

Administrator at Golden Living Center Glasgow. At the time of the negligent acts and omissions

described in this Affidavit, and for at least three of the five years prior to such negligent acts and

omissions, I was actively involved in the practice of long term care and nursing care, and served as the administrator of a long-term care facility with sufficient frequency to establish an appropriate level of knowledge regarding the care and treatment described in this Affidavit.

4.

Based on my education, training and experience, I am familiar with that degree of care and skill ordinarily exercised by skilled nursing facilities, nurses, nurses' aides, certified nursing assistants, and long-term care facility staff under similar conditions and like surrounding circumstances. More specifically, I have actual professional knowledge, training, and experience in connection with caring for residents in a skilled nursing facility/long-term care facility, including, but not limited to, performing comprehensive nursing assessments and developing individualized care plans for residents, including residents at risk for development of an infection; assessing, monitoring, and documenting development of an infection; and providing nursing care and services to residents at risk for infection, with sufficient frequency to establish an appropriate level of knowledge described in this Affidavit.

5.

I have reviewed the following records from the year 2017 for Eddie Reed in formulating my opinions in this Affidavit:

- SHC of Buckhead
- Gwinnett Medical Center
- Eastside Medical Center

6.

As the factual basis for my opinions herein, I have assumed the following overview of pertinent events, as reflected in the records reviewed, to be true:

- Eddie Reed was born on February 20, 1941 and was a resident and under the care of the skilled nursing facility known as SHC of Buckhead from September 05, 2017 through September 24, 2017.

2

- At the time of his initial admission to SHC of Buckhead, Mr. Reed carried the following diagnoses, among others: Acute Respiratory Failure, Acute CVA, Muscle Weakness, and Alzheimers.

- The facility's admission nursing assessment on 9/5/17 had the following skin conditions noted: Blisters to lower extremity, open area to right buttock, and open area to sacrum. Documentation not completed, areas not marked on body diagram. Areas not staged. Assessment completed by Licensed Practical Nurse who is not able to stage or assess wounds per nurse practice guidelines.

- According to a 02/7/2017 wound care note wounds are listed as stage II to coccyx measuring 3cmx3cmx0.1cm, Unstageable to sacrum measuring 2cm x 2cm x unmeasurable. Prealbumin level recommended at this time.

- No documentation that prealbumin level was ever drawn.

- According to a 2/14/2017 wound care note wounds are listed as coccyx wound resolved, sacrum unstageable measuring 2 x 1.7 x not measurable.

- No wound care note for 2/21/2017.

- On 2/20/2017 a progress report from nursing stated that resident was very confused and yelling out in pain. Note states that UA/CS was drawn. No order exists for UA/CS. Laboratory report states that the specimen was insufficient to run test. 9/21/2017 new specimen sent which was positive for a Urinary Tract Infection. 9/22/2017 order written for Cipro 500mg Q12 hours x 7 days.

- .Social Services note on 2/22/2017 states that SW is unable to arrange home health services for discharge, there is no additional documentation that home health services were set up before resident left on 2/24/2017, nor was family advised to not discharge until home health could be set up.

- On 9//23/2017 Mr. Reed had a temperature of 100.2 Tylenol given for fever.

- On 9/24/2017 Mr. Reed was discharged home.

- On 9/25/2017 Mr. Reed was taken to Gwinnett Medical Center with the following admitting diagnosis: Coronary Artery Disease, Cardiomyopathy, Hypertension, Alzheimer's, Atrial Fibrillation, and History of CVA.

- On 09/25/2017 Mr. Reed was noted in ER documentation to have a temperature of 103, to be hypotensive requiring fluids and eventually Levophed to support blood pressure.

- Mr. Reed was admitted to the ICU, family decided to make him comfort measures

3

- On 9/26/2017 Mr. Reed expired in ICU. Diagnosis' at time of expiration: Septic Shock, Necrotizing fasciitis, C-Diff, Acute kidney failure, atrial fibrillation with rapid ventricular response, and Multi organ failure.

Based on my education, training, experience and the facts contained in the records I reviewed, it is my opinion that SHC of Buckhead their nurses, nurses' aides, certified nursing assistants, and other staff involved in the care of Eddie Reed, violated the standard of care and failed to exercise that degree of care and skill ordinarily exercised by skilled nursing facilities generally under the same or similar conditions and like surrounding circumstances in their care and treatment of Eddie Reed.

7.

It is my opinion that the standard of care required by SHC of Buckhead  and their nurses, nurse aides, certified nursing assistants, and other staff involved in the care of Eddie Reed to:

(a) Appropriately and timely assess Mr. Reed's condition and needs, including his risk for complications related to UTI, wound infection, and abdominal infection;

(b) Provide adequate discharge planning and ensure a safe discharge.

(c) Maintain accurate and complete records of the care provided to Mr. Reed.

8.

It is my opinion, based on my education, training, experience, and my review of the records described, that SHC of Buckhead and their nurses, nurse aides, certified nursing assistants, and other staff involved in the care of Eddie Reed violated the standard of care for nurses, nurses' aides, certified nursing assistants, and long-term care staff in the care and treatment of Eddie Reed, in the following manners:

a) Failure to adequately and appropriately assess Mr. Reed's needs as evidenced by the failure to perform appropriate testing timely, ensuring that results are received timely and addressed by medical practitioner timely.

b) Failure to diagnosis and treat existing condition, as evidenced by admitting diagnosis to hospital day after discharge with sepsis diagnosis ;

c) Failure to appropriately perform discharge planning and ensure a safe discharge for resident; and

d) Failure to maintain accurate and complete records of care provided as evidenced by the failure to document orders received by practitioner, follow up to lab tests.

9.

It is my opinion that the failure of SHC of Buckhead and their nurses, nurses' aides, certified nursing assistants, and other staff involved in the care of Eddie Reed to adhere to the standard of care as outlined above resulted in significant injuries and pain and suffering to Eddie Reed, including development of sepsis and ultimately death..

12.

It is my opinion that SHC of Buckhead and their nurses, nurses' aides, certified nursing assistants, and other staff involved in the care of Eddie Reed breached the standard of care and violated state and federal regulations applicable to long-term care facilities, proximately causing Eddie Reeds injuries.

13.

Each of the opinions that I have expressed in this Affidavit are given within a reasonable degree of nursing probability.

14.

5

This Affidavit is not intended to provide an exhaustive listing of every opinion which I may have concerning this matter, and I reserve the right to express additional opinions. The opinions expressed are not intended to and should not be construed to foreclose or exclude opinions that other negligent acts or omissions and regulatory/statutory violations may have also occurred or contributed to Eddie Reed's injuries, but rather is given to meet the limited requirements of O.C.G.A. §9-11-9.1 to set forth at least one act of negligence for the Defendant in question.

Dated this 13th day of January 2018.

By: _____

PATRICIA ROAN RN MHA LNHA

Sworn to and signed before me this 14th day of March 2018 by Patricia Roan, who is personally known to me or who produced identification to me sufficient to satisfy me that she is the person who appeared before me.

My commission expires: May 19 2019

_____
Notary Public

My commission expires:

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
Julia M. Bowe
2450 O'Possum Creek Rd
Victor, WV 25938-7734
My Commission Expires May 19, 2019

# CURRICULUM VITAE

## PERSONAL INFORMATION

Name: **Patricia Roan MHA, RN, LNHA, LNC**

Address: 1640 King St South Charleston WV 25303

Telephone:304-395-0711

E-Mail: roanlegalnurseconsulting@gmail.com

## EDUCATIONAL EXPERIENCE

*Marshall University*, Huntington WV                     1993-1996

- Masters in Healthcare Administration
- Final project and internship at Womencare
  - o   Completed a complete business analysis of the company

*Marshall University*, Huntington WV                     1989-1993

- Bachelors in Business Administration
- Emphasis on accounting
- Minor in political science
- Member of Alpha Kappa Psi

*Southern West Virginia Community and Technical College,* Logan, WV     2003-2005

- Associates Degree in Nursing

## PROFESSIONAL EXPERIENCE

*Golden Living*                                         **2010-Present**

- *Executive Director*                                *2012-Present*
  - o   Administrator for a 108 bed skilled nursing facility; including a 27 bed Alzheimer's care unit
  - o   Exceeded budget every year while in position
  - o   Decreased turnover by 50%
  - o   Increased customer satisfaction to 97%

- *Director of Nursing Services*                        *2010-2012*

- o Managed staff, including 80+ nurses and CNA's
- o Stabilized nursing staff so that 85% were RN's
- o Decreased turnover rate by 30%

***Thomas Health Systems***                                        **2005-2010**

- *Nurse Manager*                                                 *2008-2010*
  - o Managed 3 units; including a skilled nursing unit, an observation unit, and an oncology floor
  - o Stabilized staffing with no open positions on all three units prior to resignation
  - o Certified all nurses on oncology floor through the ONS

- *ICU Nurse*                                                     *2005-2008*
  - o Night shift charge nurse
  - o Member of Medical Emergency Team(MET)

***Genesis Healthcare***                                           **1996-2006**

- *Weekend Supervisor and MDS Coordinator*                        *2005-2006*
  - o Responsible for oversight of staff and clinical aspects of the facility on the weekend.

- *Health Information Manager*                                    *2001-2005*
  - o Responsible for medical records functions
  - o Trainer to new HIM being hired by company; traveled to different locations

- *Client Care Coordinator and Records Manager*                  *1996-2001*
  - o Management and scheduling of a geographic region within Ohio
  - o Completely managed HR operations, including payroll functions for the branch

## LICENSES AND CERTIFICATIONS

- Registered Nurse                                               2005-Present
- Licensed Nursing Home Administrator                            2009-Present

## AFFILIATIONS

- AALNC- American Association Legal Nurse Consultants (National and local chapters)
- National Association of Long Term Care Administrators
- WV State Bar Association- Legal Nurse Consultant Division

CLERK OF STATE COUR
GWINNETT COUNTY, GEORGI
**19-C-05322-S**
**7/23/2019 3:11 PI**

CLERK OF STATE COUR

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

KENNETTE REED, as Surviving Spouse and )
Administrator of the Estate of EDD LEE REED, )
deceased, )
)
     Plaintiff, )
)
v. )    CIVIL ACTION
)
EASTSIDE MEDICAL CENTER, INC.; )    FILE NO. 19-C-05322-S4
LP ATLANTA, LLC d/b/a SIGNATURE )
HEALTHCARE OF BUCKHEAD; SIGNATURE )
HEALTHCARE CLINICAL CONSULTING )
SERVICES, LLC; SIGNATURE HEALTHCARE )
CONSULTING SERVICES, LLC; LP O )
HOLDINGS, LLC; JOHN DOES (1-5); and )
ABC CORPORATIONS (1-5), )
)
    Defendants. )

---

## PLAINTIFF'S NOTICE OF DEPOSITION PURSUANT TO O.C.G.A § 9-11-30(b)(6) and O.C.G.A. § 9-11-34 REQUEST FOR PRODUCTION

---

**TO:**    **Defendant Eastside Medical Center, Inc.**

    PLEASE TAKE NOTICE that pursuant to O.C.G.A § 9-11-30(b)(6) and O.C.G.A. § 9-11-34, Plaintiff will take the deposition of the deponent named below, at the time, date and location indicated, upon oral examination before a qualified officer duly authorized to administer oaths and swear witnesses. Please take notice the deposition will continue from day to day during normal business hours until completed. The deposition is being taken for discovery, for use at trial, and for such other purposes as are permitted under the Georgia Civil Practice Act. You are invited to attend and protect your interests.

        **DEPONENT:**    Corporate Representative of Eastside Medical Center, Inc.
        **DATE:**    October 1, 2019
        **TIME:**    10:00 AM
        **LOCATION:**    **Eastside Medical Center**
                       1700 Medical Way, Snellville, GA 30078

    Pursuant to O.C.G.A § 9-11-30(b)(6), Defendant is required to designate and fully prepare one or more persons who consents to and will be fully prepared by Defendant to testify and bind Defendant as their corporate representative concerning the following designated matters and as to all such information that is known or reasonably available to Defendant:

Page 1 of 3

1.      The existence and location of the documents requested below;

2.      The completeness of the documents requested below;

3.      Defendant's policies, procedures, and practices relating to patient/resident record content, organization, management, and retention;

4.      The nature, scope, and method by which patient/resident care information is recorded, maintained, and accessed, including the use and capabilities of software or other electronic programs; and

5.      The nature, scope, and extent of activities undertaken to prepare to respond to the topics set forth in this notice.

Pursuant to O.C.G.A. § 9-11-34, Defendant must produce the following materials at the time and place of deposition for inspection and/or copying:

1.      Admissions/Business/Billing Records: Originals of all business and administrative records, including electronically stored information, involving Edd Lee Reed, including, but not limited to, admission, screening, agreements and authorizations, and billing records.

2.      Clinical Records: Originals of all clinical records regarding Edd Lee Reed, including any electronically stored information and imaging films.

3.      Photographs/Videos: all depictions of Edd Lee Reed, including, but not limited to: (a) photographs or videos of Edd Lee Reed; (b) photographs or videos documenting the condition of Edd Lee Reed; and (c) photographs or videos of Edd Lee Reed while involved in any activity or receiving any care.

4.      Private Health Information Disclosure Log: The complete Private Health Information Disclosure Log, or comparable, regarding Edd Lee Reed.

5.      A complete copy of the entire audit trail pertaining to Edd Lee Reed's medical records contained in any computerized system for patient data or order entry in use at the facility during the residency of Edd Lee Reed. "Audit trail" refers to all documentation maintained by Defendant in any form which indicates (a) the date, time, location and identity of all persons who made entries in the chart contemporaneous with clinical treatment, (b) the date, time, location and identity of all persons who redacted, supplemented, changed, altered or made entries in the charge subsequent to care, and (c) the date, time, location, and identity of all persons who printed any portion of the chart, or who viewed the chart at any time.

6.      All documents, to the extent not encompassed in the descriptions above, which

Page 2 of 3

were created or maintained by or on behalf of the Defendant, and which relate to the condition, care, and/or treatment of Edd Lee Reed contemporaneous with his residency at the facility.

In accordance with the Americans with Disabilities Act, persons in need of special accommodations to participate in this proceeding shall, within a reasonable time prior to the proceeding contact: Johnna Hutton, Eric J. Hertz, P.C., 8300 Dunwoody Place, Suite 210, Atlanta, GA 30350, phone number (404) 577-8111. Please advise the undersigned if an interpreter will be required.

This 23rd day of July, 2019.


                                        ERIC J. HERTZ, PC

                                        */s/ Camille Godwin*
                                        _____
                                        CAMILLE GODWIN
                                        Georgia Bar Number 298650
                                        Camille@hertz-law.com

                                        *Counsel for Plaintiff*

8300 Dunwoody Pl. Suite 210
Atlanta, GA 30350
(404) 577-8111
Fax: (404) 577-8116

CLERK OF STATE COUR
GWINNETT COUNTY, GEORGI
**19-C-05322-S**
**7/23/2019 3:11 PI**

CLERK OF STATE COUR

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

KENNETTE REED, as Surviving Spouse and )
Administrator of the Estate of EDD LEE REED, )
deceased, )
                                           )
      Plaintiff, )
                                           )
v. )      **CIVIL ACTION**
                                           )
EASTSIDE MEDICAL CENTER, INC.; )      FILE NO. **19-C-05322-S4**
LP ATLANTA, LLC, d/b/a SIGNATURE )
HEALTHCARE OF BUCKHEAD; SIGNATURE )
HEALTHCARE CLINICAL CONSULTING )
SERVICES, LLC; SIGNATURE HEALTHCARE )
CONSULTING SERVICES, LLC; LP O )
HOLDINGS, LLC; JOHN DOES (1-5); and )
ABC CORPORATIONS (1-5), )
                                           )
      Defendants. )

---

## PLAINTIFF'S FIRST INTERROGATORIES TO
## DEFENDANT EASTSIDE MEDICAL CENTER, INC.

---

Plaintiff, pursuant to O.C.G.A. § 9-11-33, serves upon Defendant the following Interrogatories and requests Defendant answer each separately and fully, in writing, within forty-five (45) days after service.

1.

Please identify the full name, employer, address, and title of the person or persons furnishing the information requested in these Interrogatories.

2.

For each liability insurance policy which provides or may provide coverage for the incidents described in the Complaint, please state:

    (a)    the name of the insurer;

(b)     the name of the insured or insureds;

(c)     the limits of liability coverage;

(d)     the policy number of each policy of insurance;

(e)     whether the policy is primary or excess;

(f)     whether notice has been given to any insurer of a potential claim because of the incidents described in the Complaint; and

(g)     the present total dollar amount of any liability insurance coverage available for payment of claims.

3.

Identify by name, last known address, telephone number, and dates of employment all nursing personnel who worked at the facility during the admission of the resident.

4.

If you contend that Interrogatory No. 4 is overbroad, please identify by name, last known address, telephone number, and dates of employment all personnel who provided nursing or rehabilitative care or services to the resident at the facility (regardless of whether such care or services are documented in the records).

5.

Please describe how you determined that the persons identified in response to Interrogatory No. 5 are the only personnel who provided nursing or rehabilitative care or services to the resident at the facility.

6.

Please state whether there are any instances in the clinical record maintained by you for resident where the records fail to indicate that care and/or treatment was given at any specified date and time. If the answer to this interrogatory is in the affirmative, then please also state:

a.     Whether the specified care and/or treatment was actually provided to resident

b.     The date and time of the care and/or treatment provided

Page 2 of 8

    c.     A description of the care and/or treatment provided.

    d.     The name of the person providing the care or treatment

    e.     The reason such care or treatment was not documented in the clinical record

    f.     How you obtained the information to respond to this interrogatory.

7.

If you utilized any form of electronic documentation system to monitor, describe, report or maintain information regarding the care and/or condition of the resident, please identify the documentation system and state the dates during which it was in operation.

8.

During the residency period, please state the actual per patient day (PPD) staffing levels for the following nursing personnel: certified nurse aides only; licensed nurses only; registered nurses only; and all nursing personnel providing direct care to residents of the facility.

9.

Please identify by name, address, telephone number, title and dates of employment all administrative personnel, department heads, and program heads at the facility for the entirety of the residency, including but not limited to: Administrator, Director of Nursing, Assistant Director of Nursing, Staff Development Coordinator, MDS Coordinator, Admissions/Marketing Director, Medical Director, Charge Nurses, Nurse Administrators, Therapy Director, Dietitian, Admissions Coordinator, Social Services Director, Activities Director, and any consultant who provided services at the facility.

10.

If any persons who were not employees of the facility, including temporary/pool personnel, provided nursing care, nursing related services, nursing or medical consultation, medical services,

nutrition/diet services, therapy services, pharmacy services, personal care, custodial care, quality assurance, investigative services, survey training or preparation, evaluations of quality of care or adequacy of services, or other services to the resident at the facility, please identify all such persons as well as their employer or the contracting party through which such personnel was obtained.

11.

Please identify by name, last known address, telephone number, and dates of service all persons who served on the governing body of the facility during the residency as set forth in Georgia Regulation 111-8-56-.02.

12.

Please identify each business entity which (in whole or in part) operated, managed and/or was responsible for the operation of the nursing facility during the residency until the present. For each entity identified, please:

a. State the full legal name and address;
b. Identify the dates that each such entity (in whole or in part) operated, managed, and/or was responsible for the operation of the facility;
c. Describe the relationship between each identified entity.

13.

Please identify all persons employed at a corporate, division, regional, district, or area level during the residency whose job responsibilities included oversight or monitoring any aspect of the operations of the facility, including financial performance, staffing, census, compliance with budget, and the performance of the administrator or department heads.

14.

Please identify and provide the dates any of the below persons visited the facility during the residency and for the year preceding admission to the facility:

(a)     All regional nurses, district nurses, nurse consultants or nurses from the clinical department employed at a corporate, regional or district level by Defendants.

(b)     All persons who visited the facility at the request or direction of the Compliance Office/Department of the facility or the facility's ownership or management.

(c)     All corporate, regional, district or area level staff who visited the facility to conduct preparatory or mock inspections/surveys; to determine the facility's compliance with Medicaid/Medicare regulations; to determine the facility's compliance with resident care policies and procedures and/or monitor the delivery of care provided to residents; or to investigate and make factual findings regarding any complaint made by employees, families of residents of the facility, or visitors which dealt with the same kind of nursing home neglect specifically described and listed in the lawsuit filed by Plaintiff.

15.

State the name, last known address, telephone number and employer of any person, including any party (who is not identified in your responses to the above interrogatories) who to your knowledge, information or belief was a witness to any of the facts or circumstances complained of in the Complaint, and describe the general subject matter of that knowledge, or who has some knowledge of any fact or circumstance complained of in the Complaint, and describe the general subject matter of that knowledge.

16.

Identify all lawsuits and demands for arbitration filed within the last five years by style, case number, and venue which were filed against Defendant that in any way concerns the care, treatment, neglect, and/or abuse of residents.

17.

Identify all persons who registered concerns or made complaints about the facility or any employee (including, but not limited to, complaints in the form of resignation letters, e-mails, suggestion box, notes to supervisors, calls to corporate or management offices, surveys, hotlines, or

Page 5 of 8

otherwise) during the residency and during the three (3) month period immediately prior to and following the residency.  If you object to this interrogatory on the grounds of privacy concerns, please describe the complaint or concern to which objection is made, without identifying the person for whom a privacy concern is raised.

18.

If any investigation into the causes or circumstances of the incident made the basis of this lawsuit has been done by you or at your direction between the time of the incident and the date you were served in this case, please indicate who performed such investigation, describe the nature of such investigation including a summary of any factual observations, witness statements, and identify any documents in your possession, custody, or control relating to such investigations.

19.

If you were in reasonable anticipation of this litigation at any time prior to the date you were served with this action, then please state the earliest date which you were in such reasonable anticipation and the ground for such anticipation.

20.

State whether you have obtained statements in any form from any person regarding any of the events underlying Plaintiff's Complaint or referred to in the Complaint and corresponding affidavit, and if so, state the identity of the person from whom such statements were taken, the dates on which such statements were taken, the identity of the persons, and the custodian of such statements.

21.

Provide the factual basis for each defense asserted in Defendant's Answer to the Complaint.

22.

Pursuant to the provisions of O.C.G.A. § 9-11-26(b)(4)(A)(i), please identify each person whom you expect to call as an expert witness at trial, state the subject matter on which such expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds of each opinion.

23.

If you contend that the affidavit attached to the Complaint is deficient in any respect to meet the requirements of O.C.G.A § 9-11-9.1, please set forth in detail and with specificity each such alleged deficiency and the legal, and/or medical basis or authority for such contention of deficiency.

24.

If you contend that the affidavit attached to the Complaint is incorrect factually in any respect, please state which factual statements you contend are incorrect and state what you contend are the true and correct facts incident to each such statement. Include in your answer the name and address of all persons who have knowledge of what you contend are the incorrect facts.

25.

If you objected to any of Plaintiff's Requests for Production or Interrogatories on the basis of a privilege, please state the factual basis for the privilege assertion.


This 23rd day of July, 2019.

**ERIC J. HERTZ, PC**

*/s/ Camille Godwin*

_____

CAMILLE GODWIN
Georgia Bar Number 298650
Camille@hertz-law.com

*Counsel for Plaintiff*

8300 Dunwoody Pl. Suite 210
Atlanta, GA 30350
(404) 577-8111
Fax: (404) 577-8116

CLERK OF STATE COUR
GWINNETT COUNTY, GEORGI
**19-C-05322-S**
**7/23/2019 3:11 PI**

CLERK OF STATE COUR

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

KENNETTE REED, as Surviving Spouse and
Administrator of the Estate of EDD LEE REED,
deceased,

      Plaintiff,

v.

EASTSIDE MEDICAL CENTER, INC.;
LP ATLANTA, LLC d/b/a SIGNATURE
HEALTHCARE OF BUCKHEAD; SIGNATURE
HEALTHCARE CLINICAL CONSULTING
SERVICES, LLC; SIGNATURE HEALTHCARE
CONSULTING SERVICES, LLC; LP O
HOLDINGS, LLC; JOHN DOES (1-5); and
ABC CORPORATIONS (1-5),

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION

FILE NO. 19-C-05322-S4 _____

---

### PLAINTIFF'S FIRST INTERROGATORIES TO
### DEFENDANT LP ATLANTA, LLC d/b/a SIGNATURE
### HEALTHCARE OF BUCKHEAD

---

Plaintiff, pursuant to O.C.G.A. § 9-11-33, serves upon Defendant the following

Interrogatories and requests Defendant answer each separately and fully, in writing, within forty-

five (45) days after service.

1.

Please identify the full name, employer, address, and title of the person or persons furnishing

the information requested in these Interrogatories.

2.

For each liability insurance policy which provides or may provide coverage for the incidents

described in the Complaint, please state:

(a)    the name of the insurer;
(b)    the name of the insured or insureds;
(c)    the limits of liability coverage;
(d)    the policy number of each policy of insurance;
(e)    whether the policy is primary or excess;
(f)    whether notice has been given to any insurer of a potential claim because of the incidents described in the Complaint; and
(g)    the present total dollar amount of any liability insurance coverage available for payment of claims.

3.

Identify by name, last known address, telephone number, and dates of employment all nursing personnel who worked at the facility during the admission of the resident.

4.

If you contend that Interrogatory No. 4 is overbroad, please identify by name, last known address, telephone number, and dates of employment all personnel who provided nursing or rehabilitative care or services to the resident at the facility (regardless of whether such care or services are documented in the records).

5.

Please describe how you determined that the persons identified in response to Interrogatory No. 5 are the only personnel who provided nursing or rehabilitative care or services to the resident at the facility.

6.

Please state whether there are any instances in the clinical record maintained by you for resident where the records fail to indicate that care and/or treatment was given at any specified date and time.  If the answer to this interrogatory is in the affirmative, then please also state:

a.    Whether the specified care and/or treatment was actually provided to resident

b.    The date and time of the care and/or treatment provided

c.    A description of the care and/or treatment provided.

d.    The name of the person providing the care or treatment

e.    The reason such care or treatment was not documented in the clinical record

f.    How you obtained the information to respond to this interrogatory.

7.

If you utilized any form of electronic documentation system to monitor, describe, report or maintain information regarding the care and/or condition of the resident, please identify the documentation system and state the dates during which it was in operation.

8.

During the residency period, please state the actual per patient day (PPD) staffing levels for the following nursing personnel: certified nurse aides only; licensed nurses only; registered nurses only; and all nursing personnel providing direct care to residents of the facility.

9.

Please identify by name, address, telephone number, title and dates of employment all administrative personnel, department heads, and program heads at the facility for the entirety of the residency, including but not limited to: Administrator, Director of Nursing, Assistant Director of Nursing, Staff Development Coordinator, MDS Coordinator, Admissions/Marketing Director, Medical Director, Charge Nurses, Nurse Administrators, Therapy Director, Dietitian, Admissions Coordinator, Social Services Director, Activities Director, and any consultant who provided services at the facility.

10.

If any persons who were not employees of the facility, including temporary/pool personnel, provided nursing care, nursing related services, nursing or medical consultation, medical services,

nutrition/diet services, therapy services, pharmacy services, personal care, custodial care, quality assurance, investigative services, survey training or preparation, evaluations of quality of care or adequacy of services, or other services to the resident at the facility, please identify all such persons as well as their employer or the contracting party through which such personnel was obtained.

11.

Please identify by name, last known address, telephone number, and dates of service all persons who served on the governing body of the facility during the residency as set forth in Georgia Regulation 111-8-56-.02.

12.

Please identify each business entity which (in whole or in part) operated, managed and/or was responsible for the operation of the nursing facility during the residency until the present. For each entity identified, please:

a.   State the full legal name and address;
b.   Identify the dates that each such entity (in whole or in part) operated, managed, and/or was responsible for the operation of the facility;
c.   Describe the relationship between each identified entity.

13.

Please identify all persons employed at a corporate, division, regional, district, or area level during the residency whose job responsibilities included oversight or monitoring any aspect of the operations of the facility, including financial performance, staffing, census, compliance with budget, and the performance of the administrator or department heads.

14.

Please identify and provide the dates any of the below persons visited the facility during the residency and for the year preceding admission to the facility:

(a)   All regional nurses, district nurses, nurse consultants or nurses from the clinical department employed at a corporate, regional or district level by Defendants.

(b)   All persons who visited the facility at the request or direction of the Compliance Office/Department of the facility or the facility's ownership or management.

(c)   All corporate, regional, district or area level staff who visited the facility to conduct preparatory or mock inspections/surveys; to determine the facility's compliance with Medicaid/Medicare regulations; to determine the facility's compliance with resident care policies and procedures and/or monitor the delivery of care provided to residents; or to investigate and make factual findings regarding any complaint made by employees, families of residents of the facility, or visitors which dealt with the same kind of nursing home neglect specifically described and listed in the lawsuit filed by Plaintiff.

15.

State the name, last known address, telephone number and employer of any person, including any party (who is not identified in your responses to the above interrogatories) who to your knowledge, information or belief was a witness to any of the facts or circumstances complained of in the Complaint, and describe the general subject matter of that knowledge, or who has some knowledge of any fact or circumstance complained of in the Complaint, and describe the general subject matter of that knowledge.

16.

Identify all lawsuits and demands for arbitration filed within the last five years by style, case number, and venue which were filed against Defendant that in any way concerns the care, treatment, neglect, and/or abuse of residents.

17.

Identify all persons who registered concerns or made complaints about the facility or any employee (including, but not limited to, complaints in the form of resignation letters, e-mails, suggestion box, notes to supervisors, calls to corporate or management offices, surveys, hotlines, or

otherwise) during the residency and during the three (3) month period immediately prior to and following the residency.  If you object to this interrogatory on the grounds of privacy concerns, please describe the complaint or concern to which objection is made, without identifying the person for whom a privacy concern is raised.

18.

If any investigation into the causes or circumstances of the incident made the basis of this lawsuit has been done by you or at your direction between the time of the incident and the date you were served in this case, please indicate who performed such investigation, describe the nature of such investigation including a summary of any factual observations, witness statements, and identify any documents in your possession, custody, or control relating to such investigations.

19.

If you were in reasonable anticipation of this litigation at any time prior to the date you were served with this action, then please state the earliest date which you were in such reasonable anticipation and the ground for such anticipation.

20.

State whether you have obtained statements in any form from any person regarding any of the events underlying Plaintiff's Complaint or referred to in the Complaint and corresponding affidavit, and if so, state the identity of the person from whom such statements were taken, the dates on which such statements were taken, the identity of the persons, and the custodian of such statements.

21.

Provide the factual basis for each defense asserted in Defendant's Answer to the Complaint.

22.

Pursuant to the provisions of O.C.G.A. § 9-11-26(b)(4)(A)(i), please identify each person whom you expect to call as an expert witness at trial, state the subject matter on which such expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds of each opinion.

23.

If you contend that the affidavit attached to the Complaint is deficient in any respect to meet the requirements of O.C.G.A § 9-11-9.1, please set forth in detail and with specificity each such alleged deficiency and the legal, and/or medical basis or authority for such contention of deficiency.

24.

If you contend that the affidavit attached to the Complaint is incorrect factually in any respect, please state which factual statements you contend are incorrect and state what you contend are the true and correct facts incident to each such statement.  Include in your answer the name and address of all persons who have knowledge of what you contend are the incorrect facts.

25.

If you objected to any of Plaintiff's Requests for Production or Interrogatories on the basis of a privilege, please state the factual basis for the privilege assertion.

This 23rd day of July, 2019.

**ERIC J. HERTZ, PC**

*/s/ Camille Godwin*

_____

CAMILLE GODWIN
Georgia Bar Number 298650
Camille@hertz-law.com

*Counsel for Plaintiff*

8300 Dunwoody Pl. Suite 210
Atlanta, GA 30350
(404) 577-8111
Fax: (404) 577-8116

Page 8 of 8

FILED IN OFFICE
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGI
**19-C-05322-S**
7/23/2019 3:11 PI

*Richard T. Alexander*
CLERK OF STATE COUR

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| KENNETTE REED, as Surviving Spouse and Administrator of the Estate of EDD LEE REED, deceased,<br><br>      Plaintiff,<br><br>v.<br><br>EASTSIDE MEDICAL CENTER, INC.;<br>LP ATLANTA, LLC d/b/a SIGNATURE<br>HEALTHCARE OF BUCKHEAD; SIGNATURE<br>HEALTHCARE CLINICAL CONSULTING<br>SERVICES, LLC; SIGNATURE HEALTHCARE<br>CONSULTING SERVICES, LLC; LP O<br>HOLDINGS, LLC; JOHN DOES (1-5); and<br>ABC CORPORATIONS (1-5),<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>CIVIL ACTION<br><br>FILE NO. 19-C-05322-S4 |

---

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EASTSIDE MEDICAL CENTER, INC.

---

Plaintiff, pursuant to OCGA § 9-11-34, hereby requests that Defendant respond to the following requests for production and produce copies of responsive documents within forty-five (45) days from the date of service at the office of Eric J. Hertz, PC, 8300 Dunwoody Place, Suite 210, Atlanta, Georgia 303500.

1.

Please produce the resident's complete, certified chart from the facility. If any of the information sought pursuant to this request was created or maintained, or stored electronically, please provide this information in electronic form.  If such production is not possible or not feasible, please advise as to the reason and produce a hard copy of the information.

2.

To the extent not provided in response to request #1, please produce all documents describing or documenting the care, treatment and services provided to resident during the admission to the facility, but which is not included in the resident's chart, including, but not limited to 1) ADL records; 2) records of physician or consultant notifications; 3) 24 hour reports; 4) shift change reports; 5) change in condition reports; 5) drug disposition records; 6) consultant records; activities records; 7) menu records; 8) care schedules; 9) shower/bath records; 10) "soft" or work files maintained by any caregivers; and 11) photographs, videos or digital depictions of the resident.

If any of the information sought pursuant to this request was created or maintained, or stored electronically, please provide this information in electronic form. If such production is not possible or not feasible, please advise as to the reason and produce a hard copy of the information.

3.

All documents contained in, or considered a part of the resident's business/financial/admission file(s), including, but not limited to:

(a)     Admission documents;
(b)     Consents and authorizations;
(c)     Alternative Dispute Resolution agreements;
(d)     Billing records; and
(e)     Correspondence.

4.

All incident, accident, and/or investigative reports which relate to or concern the resident.

5.

All statements of witnesses that in any way concern the care and treatment of the

resident.

6.

All documents reflecting concerns, criticisms or complaints made by agents, servants and/or employees of Defendant concerning resident care, staffing levels or workload issues in the facility for the time period encompassing one year prior to resident's admission through the date of final discharge.

7.

All documents reflecting concerns, criticisms or complaints made pertaining to: (1) the resident or (2) one or more of the same bases for negligence set forth in the Complaint and corresponding affidavit. This request includes but is not limited to "care alert" and "care line" report emails/communications, 1-800 or hotline number communications, corporate compliance records, employee communications and employee responses to disciplinary action for the one year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

8.

All documents reflecting communications to and from any local, state, or federal governmental agency which set forth regulatory findings, conclusions, violations, deficiencies, penalties, complaint investigations, actions, plans of correction, or recommended sanctions regarding the facility for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

9.

All documentation of resident council meetings and minutes regarding the resident or any

Page 3 of 11

complaint similar to those made the basis of the Complaint for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

10.

All documentation of family council meetings and minutes regarding the resident or any complaint made the basis of the Complaint for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

11.

All customer/family surveys and data related to such surveys for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

12.

All employee surveys and data compilations related to such surveys for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

13.

All policies and procedures which were in effect at the facility during the resident's stay, including policies and procedures pertaining to:

    (a) Resident rights;
    (b) Administration, management & operation of the facility;
    (c) Admissions process and procedure;
    (d) Care and treatment of residents, including nursing services; physician services; therapies; nutrition; pharmacy; social services; activities; diagnostic services; emergency procedures; infection control; assessments; care planning; physician and family notification; changes in

condition; pain assessment and monitoring; activities of daily living; and resident rights;

(e) Investigation and correction of: (1) deficiencies, licensure violations or penalties found to exist at the facility; and/or (2) any complaint or criticism regarding the quality or adequacy of care made about the facility;

(f) Documentation and document retention;

(g) Staffing and orientation and training of staff, including employee handbooks;

(h) Performance review procedures and criteria;

(i) Risk management;

(j) Corporate compliance;

(k) Corporate operations;

(l) Corporate/management- level policies and procedures which describe (1) the standard of care that any Defendants expected the facility to comply with; (2) Staffing and/or acuity directives or models; and (3) the criteria to be used in evaluating the job performance of healthcare workers; and

(m) Marketing, sales, and census development.

14.

All training and in-service education documents used or produced from the three-month period preceding the resident's admission through the end of the residency.  Please include all schedules and descriptions of each in-service education and training session and all sign in/attendance records.

15.

All floor plans or diagrams of the facility as it existed during the resident's stay.

16.

Photographs and videos of the facility which depict the facility at or near the time of the resident's stay.

17.

All promotional materials provided to, or available to the resident or family regarding the facility.

18.

All license applications, licenses, disclosures of ownership, change of ownership/management

documents, and changes of administrator or director of nursing documents generated from two years prior to the date of admission through the three-month period following final discharge.

19.

All documents related to Defendant's communications with third parties about any of the occurrences and circumstances outlined in the Complaint which were made during the residency.

20.

All insurance policies which afford, or may afford, coverage to you or your agents, employees or officers for any conduct alleged in Complaint, including documentation of in-house reserves and letters of credit/guarantees issued to guarantee any insurance policy, reserve fund, or self-insured retention.

21.

Documentation of the resident/patient census for the facility and for each wing/unit of the facility for each day of the residency period.

22.

All data and documents necessary to calculate the hours/minutes of care required to meet the needs of residents.

23.

All documents concerning the dates, times, and hours worked for all nursing, nurse aide, and administrative personnel who worked at the facility during the residency, including, but not limited to:

(a) Records of time worked;
(b) Schedules and Assignment/Sign-In Sheets;
(c) PPD Staffing Data showing the actual number of hours of available nursing personnel time (on a per shift, per day and per month basis), or the actual number of licensed and

unlicensed nursing personnel on duty during the residency, including, but not limited to, all actual staff hour postings and all daily census posting records pursuant to 42 C.F.R. § 483.30(e);

(d) All documents necessary to calculate on a per day and/or per shift basis the actual: a) nurse to resident ratio; b) certified nurse aide to resident ratio; and c) nursing personnel to resident ratio on a daily, monthly and/or periodic basis;

(e) All documents available to the facility to determine the appropriate type and number of nursing personnel to be on duty, including any staffing charts, staffing matrices or staffing tools utilized for this purpose;

(f) All documents which show the dates, times, and hours worked by agency or pool personnel utilized to perform direct care services;

(g) User manuals, program guides, and instructions for use of all programs utilized to record, track, and/or report staffing of the facility;

(h) All documents which show the date, time and hours worked by any therapy personnel, whether employed or contract personnel; and

(i) All documents containing (a) nurse to resident ratios, direct care staff to resident ratios, nurse aide to patient ratios or full-time equivalent nursing personnel on duty, and/or nursing personnel hours per patient day, submitted to CMS or any state regulatory agency; and (b) back-up staffing information used to support any nursing staffing information submitted to CMS or any state regulatory agency.

If any of the information sought pursuant to this request was created or maintained, or stored electronically, please provide this information in electronic form. If such production is not possible or not feasible, please advise as to the reason and produce a hard copy of the information.

If any of the material sought pursuant to this request includes information in color, please provide color copies of such documents.

24.

Documentation describing and/or analyzing turnover of licensed and/or unlicensed nursing staff for the one-year period prior to the resident's admission through the date of final discharge.

25.

Documentation of communications by and among the Defendants, their agents, their employees, or third parties concerning reporting or analysis of facility key indicators and/or quality

Page 7 of 11

indicators.

26.

Documentation of communications by and among the Defendants, their agents, their employees, or third parties concerning staffing or workload issues at the facility for the two-year period immediately preceding the resident's final discharge from the facility through the three-month period immediately following final discharge. This request seeks, but is not limited to, communications concerning the following subjects:

a) Staffing for licensed and unlicensed nursing personnel;
b) Budgeting for staffing or variances from staffing/labor budgets;
c) The impact of workloads and staffing levels upon resident care or the health and safety of residents;
d) Criticisms or concerns about the cost/expense of staffing;
e) Census levels, targets, and goals;
f) Efforts to increase census;
g) Criticisms or concerns about the workload or acuity of residents.

27.

For the persons listed in your responses to Interrogatories 3, 4, and 5 of Plaintiff's First Interrogatories, please produce copies of the following:

(a) Job applications and interview notes;
(b) Records pertaining to verification of references, employment history, and criminal background checks;
(c) Records pertaining to certification/license verifications;
(d) Records pertaining to job evaluations;
(e) Records of discipline/counseling;
(f) Records pertaining to orientation, skills tests, and training;
(g) Records pertaining to transfers and termination, including resignation letters;
(h) Records documenting acknowledgements of policies, procedures, and company directives; and
(i) Job descriptions.

Please redact social security numbers and private health information from the documents produced.

Page 8 of 11

28.

All agreements for management, consultation, and/or administrative services provided to the facility or its residents in effect during the residency.

29.

All documents evidencing communications between or among any Defendants with regard to the management of the facility, including communications regarding staffing levels, use of resources, acuity of residents, resident census, revenues, costs, and hiring, training, disciplining and/or firing personnel.

30.

All documents containing budgets, budgetary guidelines, expense restrictions or limitations, suggested operational costs or expense ceilings for the nursing home, including, but not limited to, budget modifications, requests for modification, supplemental budgets, and financial forecasts.

31.

Medicare and Medicaid cost reports submitted by or on behalf of the facility, including all explanation notes, supplemental documentation, exhibits and attachments.

32.

Medicare and Medicaid Home Office Cost Reports: Medicare and Medicaid home office cost reports submitted by or on behalf of the Defendants, including all explanation notes, supplemental documentation, exhibits and attachments.

33.

For each expert witness, you expect to call at the trial of this action, please produce a copy of all correspondence to such witness, correspondence or reports received from such witnesses, invoices or statement reflecting charges rendered by such witness, and all materials reviewed by

Page **9** of **11**

such witness relating to their participation in this case.

34.

A listing of the identities, dates of employment, and contact information for all Registered Nurses, Licensed Practical Nurses, and Certified Nursing Assistants at the facility during the residency and year prior to the resident's admission.

35.

Acuity reports for the residency and the year prior to the resident's admission, including daily acuity reports, weekly acuity reports, monthly acuity reports, and acuity trend reports.

36.

The complete Private Health Information Disclosure Log, or comparable, regarding the resident.

37.

The complete audit trail pertaining to the resident's medical records contained in any computerized system for patient data or order entry in use at the facility during the residency. The includes but is not limited to all documentation maintained by Defendant in any form which indicates (a) the date, time, location and identity of all persons who made entries in the chart contemporaneous with clinical treatment, (b) the date, time, location and identity of all persons who redacted, supplemented, changed, altered or made entries in the charge subsequent to care, and (c) the date, time, location, and identity of all persons who printed any portion of the chart, or who viewed the chart at any time.

38.

Any documentation concerning assessments conducted in accordance with 42 C.F.R. § 483.70(e) during the residency and the two years prior to the resident's admission.

This 23rd day of July, 2019.

ERIC J. HERTZ, PC

/s/ Camille Godwin

_____

CAMILLE GODWIN
Georgia Bar Number 298650
Camille@hertz-law.com

*Counsel for Plaintiff*

8300 Dunwoody Pl. Suite 210
Atlanta, GA 30350
(404) 577-8111
Fax: (404) 577-8116

Page 11 of 11

CLERK OF STATE COUR
GWINNETT COUNTY, GEORGI
**19-C-05322-S**
7/23/2019 3:11 PI

*Alford J. Alford*
CLERK OF STATE COUR

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

KENNETTE REED, as Surviving Spouse and
Administrator of the Estate of EDD LEE REED,
deceased,

  Plaintiff,

v.

EASTSIDE MEDICAL CENTER, INC.;
LP ATLANTA, LLC d/b/a SIGNATURE
HEALTHCARE OF BUCKHEAD; SIGNATURE
HEALTHCARE CLINICAL CONSULTING
SERVICES, LLC; SIGNATURE HEALTHCARE
CONSULTING SERVICES, LLC; LP O
HOLDINGS, LLC; JOHN DOES (1-5); and
ABC CORPORATIONS (1-5),

  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION

FILE NO. 19-C-05322-S4

---

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LP ATLANTA, LLC d/b/a SIGNATURE HEALTHCARE OF BUCKHEAD

---

  Plaintiff, pursuant to OCGA § 9-11-34, hereby requests that Defendant respond to the following requests for production and produce copies of responsive documents within forty-five (45) days from the date of service at the office of Eric J. Hertz, PC, 8300 Dunwoody Place, Suite 210, Atlanta, Georgia 303500.

### 1.

  Please produce the resident's complete, certified chart from the facility. If any of the information sought pursuant to this request was created or maintained, or stored electronically, please provide this information in electronic form. If such production is not possible or not feasible, please advise as to the reason and produce a hard copy of the information.

2.

To the extent not provided in response to request #1, please produce all documents describing or documenting the care, treatment and services provided to resident during the admission to the facility, but which is not included in the resident's chart, including, but not limited to 1) ADL records; 2) records of physician or consultant notifications; 3) 24 hour reports; 4) shift change reports; 5) change in condition reports; 6) drug disposition records; 6) consultant records; activities records; 7) menu records; 8) care schedules; 9) shower/bath records; 10) "soft" or work files maintained by any caregivers; and 11) photographs, videos or digital depictions of the resident.

If any of the information sought pursuant to this request was created or maintained, or stored electronically, please provide this information in electronic form.  If such production is not possible or not feasible, please advise as to the reason and produce a hard copy of the information.

3.

All documents contained in, or considered a part of the resident's business/financial/admission file(s), including, but not limited to:

(a)     Admission documents;
(b)     Consents and authorizations;
(c)     Alternative Dispute Resolution agreements;
(d)     Billing records; and
(e)     Correspondence.

4.

All incident, accident, and/or investigative reports which relate to or concern the resident.

5.

Page 2 of 11

All statements of witnesses that in any way concern the care and treatment of the resident.

6.

All documents reflecting concerns, criticisms or complaints made by agents, servants and/or employees of Defendant concerning resident care, staffing levels or workload issues in the facility for the time period encompassing one year prior to resident's admission through the date of final discharge.

7.

All documents reflecting concerns, criticisms or complaints made pertaining to: (1) the resident or (2) one or more of the same bases for negligence set forth in the Complaint and corresponding affidavit. This request includes but is not limited to "care alert" and "care line" report emails/communications, 1-800 or hotline number communications, corporate compliance records, employee communications and employee responses to disciplinary action for the one year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

8.

All documents reflecting communications to and from any local, state, or federal governmental agency which set forth regulatory findings, conclusions, violations, deficiencies, penalties, complaint investigations, actions, plans of correction, or recommended sanctions regarding the facility for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

9.

All documentation of resident council meetings and minutes regarding the resident or any complaint similar to those made the basis of the Complaint for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

10.

All documentation of family council meetings and minutes regarding the resident or any complaint made the basis of the Complaint for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

11.

All customer/family surveys and data related to such surveys for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

12.

All employee surveys and data compilations related to such surveys for the one-year period immediately preceding the resident's admission through the three (3) month period immediately following the date of final discharge.

13.

All policies and procedures which were in effect at the facility during the resident's stay, including policies and procedures pertaining to:

(a) Resident rights;
(b) Administration, management & operation of the facility;
(c) Admissions process and procedure;
(d) Care and treatment of residents, including nursing services; physician services; therapies;

Page 4 of 11

nutrition; pharmacy; social services; activities; diagnostic services; emergency procedures; infection control; assessments; care planning; physician and family notification; changes in condition; pain assessment and monitoring; activities of daily living; and resident rights;

(e) Investigation and correction of: (1) deficiencies, licensure violations or penalties found to exist at the facility; and/or (2) any complaint or criticism regarding the quality or adequacy of care made about the facility;

(f) Documentation and document retention;

(g) Staffing and orientation and training of staff, including employee handbooks;

(h) Performance review procedures and criteria;

(i) Risk management;

(j) Corporate compliance;

(k) Corporate operations;

(l) Corporate/management-level policies and procedures which describe (1) the standard of care that any Defendants expected the facility to comply with; (2) Staffing and/or acuity directives or models; and (3) the criteria to be used in evaluating the job performance of healthcare workers; and

(m) Marketing, sales, and census development.

14.

All training and in-service education documents used or produced from the three-month period preceding the resident's admission through the end of the residency.  Please include all schedules and descriptions of each in-service education and training session and all sign in/attendance records.

15.

All floor plans or diagrams of the facility as it existed during the resident's stay.

16.

Photographs and videos of the facility which depict the facility at or near the time of the resident's stay.

17.

All promotional materials provided to, or available to the resident or family regarding the facility.

18.

All license applications, licenses, disclosures of ownership, change of ownership/management documents, and changes of administrator or director of nursing documents generated from two years prior to the date of admission through the three-month period following final discharge.

19.

All documents related to Defendant's communications with third parties about any of the occurrences and circumstances outlined in the Complaint which were made during the residency.

20.

All insurance policies which afford, or may afford, coverage to you or your agents, employees or officers for any conduct alleged in Complaint, including documentation of in-house reserves and letters of credit/guarantees issued to guarantee any insurance policy, reserve fund, or self-insured retention.

21.

Documentation of the resident/patient census for the facility and for each wing/unit of the facility for each day of the residency period.

22.

All data and documents necessary to calculate the hours/minutes of care required to meet the needs of residents.

23.

All documents concerning the dates, times, and hours worked for all nursing, nurse aide, and administrative personnel who worked at the facility during the residency, including, but not limited to:

(a) Records of time worked;
(b) Schedules and Assignment/Sign-In Sheets;

Page 6 of 11

(c) PPD Staffing Data showing the actual number of hours of available nursing personnel time (on a per shift, per day and per month basis), or the actual number of licensed and unlicensed nursing personnel on duty during the residency, including, but not limited to, all actual staff hour postings and all daily census posting records pursuant to 42 C.F.R. § 483.30(e);

(d) All documents necessary to calculate on a per day and/or per shift basis the actual: a) nurse to resident ratio; b) certified nurse aide to resident ratio; and c) nursing personnel to resident ratio on a daily, monthly and/or periodic basis;

(e) All documents available to the facility to determine the appropriate type and number of nursing personnel to be on duty, including any staffing charts, staffing matrices or staffing tools utilized for this purpose;

(f) All documents which show the dates, times, and hours worked by agency or pool personnel utilized to perform direct care services;

(g) User manuals, program guides, and instructions for use of all programs utilized to record, track, and/or report staffing of the facility;

(h) All documents which show the date, time and hours worked by any therapy personnel, whether employed or contract personnel; and

(i) All documents containing (a) nurse to resident ratios, direct care staff to resident ratios, nurse aide to patient ratios or full-time equivalent nursing personnel on duty, and/or nursing personnel hours per patient day, submitted to CMS or any state regulatory agency; and (b) back-up staffing information used to support any nursing staffing information submitted to CMS or any state regulatory agency.

If any of the information sought pursuant to this request was created or maintained, or stored electronically, please provide this information in electronic form. If such production is not possible or not feasible, please advise as to the reason and produce a hard copy of the information.

If any of the material sought pursuant to this request includes information in color, please provide color copies of such documents.

24.

Documentation describing and/or analyzing turnover of licensed and/or unlicensed nursing staff for the one-year period prior to the resident's admission through the date of final discharge.

25.

Documentation of communications by and among the Defendants, their agents, their

Page 7 of 11

employees, or third parties concerning reporting or analysis of facility key indicators and/or quality indicators.

26.

Documentation of communications by and among the Defendants, their agents, their employees, or third parties concerning staffing or workload issues at the facility for the two-year period immediately preceding the resident's final discharge from the facility through the three-month period immediately following final discharge.   This request seeks, but is not limited to, communications concerning the following subjects:

a) Staffing for licensed and unlicensed nursing personnel;
b) Budgeting for staffing or variances from staffing/labor budgets;
c) The impact of workloads and staffing levels upon resident care or the health and safety of residents;
d) Criticisms or concerns about the cost/expense of staffing;
e) Census levels, targets, and goals;
f) Efforts to increase census;
g) Criticisms or concerns about the workload or acuity of residents.

27.

For the persons listed in your responses to Interrogatories 3, 4, and 5 of Plaintiff's First Interrogatories, please produce copies of the following:

(a) Job applications and interview notes;
(b) Records pertaining to verification of references, employment history, and criminal background checks;
(c) Records pertaining to certification/license verifications;
(d) Records pertaining to job evaluations;
(e) Records of discipline/counseling;
(f) Records pertaining to orientation, skills tests, and training;
(g) Records pertaining to transfers and termination, including resignation letters;
(h) Records documenting acknowledgements of policies, procedures, and company directives; and
(i) Job descriptions.

Please redact social security numbers and private health information from the documents

produced.

28.

All agreements for management, consultation, and/or administrative services provided to the facility or its residents in effect during the residency.

29.

All documents evidencing communications between or among any Defendants with regard to the management of the facility, including communications regarding staffing levels, use of resources, acuity of residents, resident census, revenues, costs, and hiring, training, disciplining and/or firing personnel.

30.

All documents containing budgets, budgetary guidelines, expense restrictions or limitations, suggested operational costs or expense ceilings for the nursing home, including, but not limited to, budget modifications, requests for modification, supplemental budgets, and financial forecasts.

31.

Medicare and Medicaid cost reports submitted by or on behalf of the facility, including all explanation notes, supplemental documentation, exhibits and attachments.

32.

Medicare and Medicaid Home Office Cost Reports: Medicare and Medicaid home office cost reports submitted by or on behalf of the Defendants, including all explanation notes, supplemental documentation, exhibits and attachments.

33.

For each expert witness, you expect to call at the trial of this action, please produce a copy

of all correspondence to such witness, correspondence or reports received from such witnesses, invoices or statement reflecting charges rendered by such witness, and all materials reviewed by such witness relating to their participation in this case.

34.

A listing of the identities, dates of employment, and contact information for all Registered Nurses, Licensed Practical Nurses, and Certified Nursing Assistants at the facility during the residency and year prior to the resident's admission.

35.

Acuity reports for the residency and the year prior to the resident's admission, including daily acuity reports, weekly acuity reports, monthly acuity reports, and acuity trend reports.

36.

The complete Private Health Information Disclosure Log, or comparable, regarding the resident.

37.

The complete audit trail pertaining to the resident's medical records contained in any computerized system for patient data or order entry in use at the facility during the residency. The includes but is not limited to all documentation maintained by Defendant in any form which indicates (a) the date, time, location and identity of all persons who made entries in the chart contemporaneous with clinical treatment, (b) the date, time, location and identity of all persons who redacted, supplemented, changed, altered or made entries in the charge subsequent to care, and (c) the date, time, location, and identity of all persons who printed any portion of the chart, or who viewed the chart at any time.

38.

Any documentation concerning assessments conducted in accordance with 42 C.F.R. § 483.70(e) during the residency and the two years prior to the resident's admission.

This 23rd day of July, 2019.

ERIC J. HERTZ, PC

/s/ Camille Godwin

CAMILLE GODWIN
Georgia Bar Number 298650
Camille@hertz-law.com

*Counsel for Plaintiff*

8300 Dunwoody Pl. Suite 210
Atlanta, GA 30350
(404) 577-8111
Fax: (404) 577-8116

Page 11 of 11