# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| KENNETTE REED, as Surviving Spouse and Administrator of the Estate of Edd Lee Reed, deceased,<br><br>      Plaintiff,<br><br>           v.<br><br>EASTSIDE MEDICAL CENTER, LLC; LP ATLANTA, LLC d/b/a/ SIGNATURE HEALTHCARE OF BUCKHEAD; SIGNATURE HEALTHCARE CLINICAL CONSULTING SERVICES, LLC; SIGNATURE HEALTHCARE CONSULTING SERVICES, LLC; LP O HOLDINGS, LLC; JOHN DOES (1-5); and ABC CORPORATIONS (1-5),<br><br>      Defendants. | Civil Action No.<br>1:19-cv-03967-SDG |

## OPINION AND ORDER

This matter is before the Court on the motion by Defendants LP Atlanta, LLC; Signature HealthCARE Clinical Consulting Services, LLC; Signature HealthCARE Consulting Services, LLC; and LP O HOLDINGS, LLC (the Signature Defendants) to compel alternative dispute resolution and stay proceedings [ECF 6]. For the reasons stated below, the motion is **DENIED WITHOUT PREJUDICE**.

# I.   BACKGROUND

## a.   Factual Allegations

On July 29, 2017, Edd Lee Reed suffered a stroke that required his hospitalization.[1] Reed was admitted to Defendant Eastside Medical Center, LLC (Eastside) the same day.[2] While at Eastside, Reed developed a pressure wound and several areas of "skin breakdown" from which he had not previously suffered.[3] Reed remained at Eastside until September 5, 2017, when he was transferred to Defendant LP Atlanta, LLC dba Signature Healthcare of Buckhead, a skilled nursing facility (the Facility).[4]

When Reed was transferred to the Facility, he was still suffering from various wounds.[5] Reed also developed an infection and fever around the period

---

[1]   ECF 38-2, ¶ 19.

Unless otherwise indicated, these background facts are drawn from the well-pleaded allegations in the Complaint. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]   ECF 38-2, ¶ 19.

[3]   *Id.* ¶ 20. *See also id.* ¶¶ 20–24.

[4]   *Id.* ¶ 25.

[5]   *Id.* ¶¶ 26–27.

from September 20–23, 2017.[6] Despite his condition, Reed was discharged to his home on September 24.[7] On September 25, Reed was admitted to Gwinnett Medical Center, where he died the following day in the intensive care unit.[8] Reed's death certificate identifies his cause of death as a consequence of, *inter alia*, necrotizing fasciitis, septic shock, or multisystem organ failure.[9]

### b.  Procedural History

On July 23, 2019, Plaintiff Kennette Reed initiated this action in the State Court of Gwinnett County, Georgia.[10] The original complaint alleged that the negligence of Defendants caused the death of her husband, Reed.[11] Plaintiff, as the surviving spouse of Reed and as administrator of Reed's estate, seeks (among

---

[6]  *Id.*

[7]  *Id.* ¶ 29.

[8]  *Id.* ¶ 30.

[9]  *Id.*

[10]  ECF 38-1.

[11]  *Id.*

For the avoidance of confusion, this Order refers to Kennette Reed as Plaintiff and Edd Lee Reed as Reed.

Plaintiff also named as Defendants "John Does (1–5)" and "ABC Corporations (1–5)." [ECF 38-1, at 1.] However, because fictitious-party pleading is not generally permitted in federal court—with a limited exception that is not applicable here—the John Does and ABC Corporations are disregarded for purposes of this Order. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)).

other things) damages for the full value of Reed's life and loss of consortium, as well as punitive damages.[12]

Plaintiff filed an amended complaint on July 24, 2019, asserting the same causes of action.[13] The Signature Defendants removed to this Court on September 4, 2019.[14] On September 6, these Defendants filed the instant Motion to Compel Alternative Dispute Resolution and Stay Proceedings (the Motion to Compel Arbitration).[15] On September 20, Plaintiff opposed the Signature Defendants' motion.[16] The Signature Defendants filed their reply on October 4, 2019.[17]

---

[12]   *See generally* ECF 38-1; ECF 38-2.

[13]   ECF 38-2.

[14]   ECF 1-4.

[15]   ECF 6.

   Although Plaintiff filed an amendment correcting the name of Eastside (to reflect that it is a limited liability company) after the Signature Defendants filed their motion to compel arbitration [*compare* ECF 6 *with* ECF 8], the Court granted Plaintiff and the Signature Defendants' request [ECF 15] that the motion to compel operate as the Signature Defendants' response to Plaintiff's amended pleading [ECF 20].

[16]   ECF 13.

[17]   ECF 17.

Eastside is not alleged to be a party to the arbitration agreement.[18] Nor has Eastside joined the Signature Defendants' motion to compel arbitration.[19] In fact, Eastside has answered each of Plaintiff's pleadings.[20] There is thus no challenge to Plaintiff's ability to assert her claims against Eastside in this Court, and such claims are not affected by this Order. The Court has jurisdiction over this matter under 28 U.S.C. § 1332 based on diversity of citizenship. All Defendants are diverse from Plaintiff and the amount in controversy exceeds $75,000.[21] Accordingly, the only issue on which the Court must rule at this stage is whether the Signature Defendants' motion to compel arbitration should be granted. The Court finds that, under the circumstances presented here, it should not.

---

[18]  ECF 6. *See also* ECF 6-2.

[19]  *See generally* ECF 6.

[20]  ECF 2; ECF 14; ECF 38-3.

[21]  Plaintiff is a citizen of the State of Georgia. [ECF 1-4, ¶ 4.] The Signature Defendants are all limited liability companies that are citizens of the places where their members are located (Arizona, California, Connecticut, Kentucky, New Jersey, New York, Tennessee, Texas, and the United Kingdom). [*Id.* ¶ 9.] *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen."). Eastside is also a limited liability company and is therefore a citizen of Delaware, Nevada, and Tennessee. [ECF 39, at 4; ECF 39-1, ¶¶ 4–8.]

## II.      LEGAL STANDARD

The Federal Arbitration Act reflects the strong federal policy in favor of arbitration. *Howsam v Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (noting that the Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements'") (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). *See also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration.") (citations omitted). That said, parties cannot be required to submit a dispute to arbitration unless they have agreed to do so. "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (citations omitted); *Howsam*, 537 U.S. at 83; *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

## III.     DISCUSSION

### a.      The parties' purported arbitration agreement

The Signature Defendants contend that Plaintiff is obligated to pursue her claims through alternative dispute resolution (ADR), including arbitration, rather

than proceeding in this Court.[22] They assert that all of Plaintiffs' claims are subject to the terms of the Agreement to Informally Resolve and Arbitrate All Disputes (the Arbitration Agreement) that Plaintiff allegedly signed when Reed was admitted to the Facility.[23] A copy of the Arbitration Agreement is attached to the Signature Defendants' motion and states in pertinent part:

### AGREEMENT TO INFORMALLY RESOLVE AND ARBITRATE ALL DISPUTES

. . . .

*Please know we require all new residents and/or their legal representatives to read, agree, and sign this Agreement for admission.*

. . . .

**RESIDENT, FACILITY, AND ANY OTHER PERSON SIGNING THIS DOCUMENT UNDERSTAND AND AGREE THAT:**

1. If a dispute or legal claim of any kind . . . arises between the parties signing this agreement . . . :

   – We will first try and resolve the dispute informally between ourselves.

   – If we do not succeed, we will mediate the dispute.

   – If mediation is not successful, we will arbitrate the dispute.

2. The arbitrator will be a neutral person who will decide our dispute, and who we agree:

---

[22]  ECF 6.

[23]  ECF 6-1; ECF 6-2.

. . . .

   –  Will decide all questions about this agreement, including but not limited [to] whether the person(s) signing it has proper authority and whether it is enforceable.

. . . .

**THIS MEANS THAT NO ONE WILL FILE A LAWSUIT AGAINST THE OTHER, AND THAT EACH PARTY IS GIVING UP, OR WAIVING, THE RIGHT TO FILE A LAWSUIT AND HAVE A JUDGE OR A JURY DECIDE THE DISPUTE AND/OR ANY ISSUES ABOUT THIS AGREEMENT** . . . .[24]

Paragraph 11, on the last page of the Arbitration Agreement, applies when the resident (*i.e.*, Reed) is not signing on his own behalf. It states:[25]

---

[24]  ECF 6-2, at 3 (emphasis in original).

[25]  *Id.* at 5 (emphasis in original).

**[ONLY COMPLETE THIS SECTION, NO. 11, IF THE RESIDENT IS NOT SIGNING HIM/HERSELF.]**

11. *If I am not the Resident and am signing on the Resident's behalf*, I have shown the Facility evidence of my authority to sign for the Resident, or represented my authority to the Facility with the intention and understanding that the Facility is relying on my representation:

    *a.* *I have legal authority to sign this agreement:*

        **(Check all that apply)**

      - The Resident, while able, gave me oral authority to make decisions for him/her     \_\_\_\_\_
      - I have handled the Resident's legal and business affairs for _____ (years / months)     \_\_\_\_\_
      - The Resident signed a written document allowing me to make decisions for him/her
        (e.g., POA, health care surrogate, living will)     \_\_\_\_\_
      - I am recognized as the health care decision maker or surrogate under state law     \_\_\_\_\_
      - A court has given me written authority to act and make decisions for the Resident
        (e.g., conservator or guardian)     \_\_\_\_\_

    *b.* *By allowing the Facility's care and treatment for the Resident, I ratify this agreement, and will not, individually or as a representative of the Resident, contest its validity or enforceability*   \_\_\_\_\_

    *c.* *I understand and agree that the Resident and his/her agents, heirs, beneficiaries, estate, and assigns are intended beneficiaries of, and will be bound by, this agreement.*   \_\_\_\_\_

None of the separate lines to the right is checked or initialed in the version of the agreement supposedly executed by Plaintiff.[26]

Just below Paragraph 11 are the words "**SIGN HERE!**" (which are printed in substantially larger font than the rest of the document), and a statement that says:

> **I HAVE READ THIS DOCUMENT, UNDERSTAND IT, HAVE HAD THE CHANCE TO ASK QUESTIONS, AND ACKNOWLEDGE MY RIGHT TO SPEAK WITH AN ATTORNEY ABOUT THIS. I UNDERSTAND THIS AGREEMENT IS REQUIRED FOR**

---

[26] *Id.*

ADMISSION TO THE FACILITY. I VOLUNTARILY
CONSENT TO ALL OF ITS TERMS AND
CONDITIONS . . . .[27]

This is followed by the signature block:[28]

Date:    _9/5/2017 | 1:19:08_ PM EDT

_____          DocuSigned by:
                                       _Dion Dozic_____
**Resident's Signature**               ~~Facility Representative~~ Facility Representative

DocuSigned by:
_bennette Reed_____
~~Resident's~~ Resident's Authorized Representative/ Individual* Signature

*Representative understands and agrees s/he is
signing in both representative and individual capacities.*

The text above the electronic signatures says "DocuSigned by." The asterisked text
below the representative signature line, which appears in substantially smaller
text than the rest of the agreement, states: "*Representative understands and
agrees s/he is signing in both representative and individual capacities."

### b.    The parties' arguments

Plaintiff was the attorney-in-fact for Reed, pursuant to a durable power of
attorney duly executed on September 25, 2015 (the POA).[29] The POA authorized
Plaintiff, among other things, to manage and conduct all of Reed's affairs and

---

[27]   *Id.*

[28]   *Id.*

[29]   ECF 6-3.

exercise all of his legal rights and powers.[30] It also specifically permitted Plaintiff to "[e]nter into binding contracts" on Reed's behalf.[31] As a result, the Signature Defendants argue, Plaintiff must engage in ADR and arbitration because she had the authority to sign and did sign the Arbitration Agreement on behalf of Reed.[32]

The parties do not contest the authenticity of the POA or whether Plaintiff had the legal authority under the POA to bind Reed to a contract. Rather, Plaintiff argues that the Signature Defendants have failed to establish the existence of a valid arbitration agreement because they have not established the authenticity of the electronic signature that appears at the end of the Arbitration Agreement.[33] In particular, Plaintiff points out that she signed other admission paperwork by hand.[34] She also argues the burden of proving a valid agreement belongs to the Signature Defendants: since they cannot establish that she assented to the Arbitration Agreement based on the electronic signature, they cannot compel her to engage in ADR or arbitration.[35]

---

[30]   *Id.* at 2.

[31]   *Id.* at 3 ¶ 6.

[32]   ECF 6-1, at 9–11.

[33]   *See generally* ECF 13, at 6–10.

[34]   *Id.* at 8.

[35]   *Id.* at 6–8.

Plaintiff further argues that, even if the Signature Defendants could establish the authenticity of the electronic signature, the parties never agreed to all material terms of the contract because there is no affirmation or acceptance of the statements in Paragraph 11, as replicated above.[36] Finally, Plaintiff argues that the Arbitration Agreement is not enforceable because it violates public policy in the form of regulations promulgated by the Centers for Medicare & Medicaid Services (CMS) in September 2019.[37]

In reply, the Signature Defendants argue that Plaintiff does not deny signing the Arbitration Agreement and that she bears the burden of proof in contesting the signature.[38] They further assert, in circular fashion, that Plaintiff "undoubtedly assented to the arbitration agreement and its terms" because her electronic signature appears on the last page of the Arbitration Agreement.[39] Finally, the Signature Defendants argue that the CMS regulations cannot have retroactive effect, and therefore cannot form the basis for a public policy that would prohibit enforcement of the parties' Arbitration Agreement.[40]

---

[36] *Id.* at 8–10.

[37] ECF 13, at 3–6.

[38] ECF 17, at 4–5.

[39] *Id.* at 6. *See generally id.* at 4–6.

[40] *Id.* at 2–4.

c. **Analysis**

"The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.' Absent such an agreement, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'" *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)). Accordingly, the Court first addresses whether the parties entered into a valid contract requiring arbitration.

> i.   **The Court must apply Georgia law to determine whether the parties entered into a valid agreement to arbitrate.**

Plaintiff's arguments challenge the formation of the Arbitration Agreement. "It is [ ] well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock*, 561 U.S. at 296 (citations omitted). This standard "make[s] logical sense: How could a court enforce an arbitration clause contained in a contract that may never have been formed in the first place?" *Cogas Consulting, LLC v. Aeterna Zentaris Inc.*, Civ. A. No. 1:18-cv-1238-AT, 2018 WL 7253597, at *4 (N.D. Ga. Aug. 27, 2018).

State law governs whether the parties formed a contract. *Bazemore*, 827 F.3d at 1329 (citing *First Options*, 514 U.S. at 944). *See also Cogas Consulting*, 2018 WL 7253597, at *3 ("[T]his Circuit repeatedly has emphasized that state law generally

governs whether an enforceable contract or agreement to arbitrate exists.")
(citations omitted) (internal quotation marks omitted). Accordingly, "[t]he Court
simply looks to whether contract formation is in dispute—either because Plaintiff
or Defendant denies its existence—and then looks to governing state-law
principles to resolve the formation dispute." *Cogas Consulting*, 2018 WL 7253597,
at *3.

"In diversity cases, the choice-of-law rules of the forum state determine
what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d
927, 932 (11th Cir. 2013). For contract cases, "Georgia follows the traditional rule
of *lex loci contractus*." *McGill v. Am. Trucking & Trans., Ins. Co.*, 77 F. Supp. 3d 1261,
1264 (N.D. Ga. 2015). Pursuant to this doctrine, "contracts are governed by the law
of the place where they were 'made.'" *Id*. Contracts are "made" where "the last act
essential to the completion of the contract was done." *Gen. Tel. Co. of Se. v. Trimm*,
252 Ga. 95, 95 (1984) (citing *Peretzman v. Borochoff*, 58 Ga. App. 838 (1938)). Here,
the last act necessary to "make" the Arbitration Agreement—if there was such an
agreement—was Plaintiff's alleged execution of it in Georgia.[41] *Int'l Bus. Machines
Corp., v. Kemp*, 244 Ga. App. 638, 641–62 (2000) (under Georgia law, laws of state

---

[41]   ECF 6, at 2; ECF 6-1, at 2, 4.

where acceptance occurs govern contract). Accordingly, Georgia law governs the issue of contract formation.

Under Georgia law, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. The party asserting that the contract exists—here, the Signature Defendants—is the one that bears the burden of proof to establish its existence. *Jackson v. Easters*, 190 Ga. App. 713, 714 (1989) (citations omitted). *See also Bazemore*, 827 F.3d at 1330 (citing *Jackson*, 190 Ga. App. at 714).

### ii.   The Signature Defendants have not established the authenticity of the electronic signature on the Arbitration Agreement.

The key problem here is that the signature on the Arbitration Agreement above the "Authorized Representative/Individual* Signature" line was typed and made electronically through DocuSign.[42] Thus, as Plaintiff points out, it is "impossible to authenticate the signature as belonging to Plaintiff via recognition of the handwriting."[43] Moreover, Plaintiff has presented some (scant) evidence

---

42   ECF 6-2, at 5.

43   ECF 13, at 7–8 (citing Fed. R. Evid. 901(b)(2)).

that other admission paperwork she executed when Reed was admitted to the Facility was signed by hand.[44]

The Signature Defendants' motion does not point to any evidence that Plaintiff is the one who personally placed the electronic signature on the Arbitration Agreement or that she authorized someone else to do so.[45] In fact, other than the existence of a typed electronic signature on the Arbitration Agreement, the Signature Defendants have not pointed to anything suggesting that the document was even presented to Plaintiff.[46] *Bazemore*, 827 F.3d at 1331 (defendant "has presented no competent evidence that [the plaintiff] entered into any relevant arbitration agreement. Accordingly, it cannot compel her to arbitrate on the basis of such terms.").

In their reply brief, the Signature Defendants emphasize that Plaintiff did not deny signing the agreement.[47] They also contend that the burden of proof is on the party contesting the genuineness of a signature to show that the signature is not hers.[48] The cases cited in support are, however, inapposite. *See Nelson v. State*

---

[44] *Id.* at 8.

[45] *See generally* ECF 6-1, at 2, 4, 9–11.

[46] *See generally id.*

[47] ECF 17, at 4.

[48] *Id.* at 5.

*Farm Life Ins. Co.*, 178 Ga. App. 670 (1986); *Bunn v. Farmers' Warehouse Co.*, 19 Ga. App. 567, 90 S.E. 78 (1916). Both *Bunn* and *Nelson* involved attacks on signatures made by hand. *Nelson*, 178 Ga. App. at 672; *Bunn*, 90 S.E. at 79. The Signature Defendants cite no authority with regard to the treatment of typed electronic signatures, which obviously lack the ability to be authenticated through handwriting analysis.

The requirement in Federal Rule of Evidence 901(b)(4) "that there be something more than the appearance of the item [to authenticate it] is particularly important with respect to documents that can be easily altered, ***such as those generated by computer***." *Brown v. Great-W. Healthcare*, Civ. A. No. 1:05-cv-2676-RWS-GGB, 2007 WL 4730651, at *3 (N.D. Ga. June 8, 2007) (emphasis added) (citing, *inter alia*, 2 Kenneth S. Broun, *McCormick on Evidence* § 227 (6th ed. 2006) ("E-mails can be authenticated by their authorship. The electronic signature that they bear may not be sufficient, however, because of the risk of manipulation of e-mail headers."); 34 Am. Crim. L. Rev. 1387, 1388 (1997) (stating that "the increasing use of electronic mail in the United States, combined with the ease with which it can be forged, should at least give courts pause")).

The Signature Defendants also argue that, because "acceptance of the arbitration agreement was required for a resident to be admitted to the [F]acility[,]

[i]t is undisputed that Reed was admitted to the facility, which would not have occurred absent Plaintiff's acceptance of the agreement."[49] This tautology does nothing to establish Plaintiff's acceptance of the Arbitration Agreement. The Signature Defendants have not come forward with any evidence that Plaintiff placed her electronic signature on the Arbitration Agreement, that she was presented with a copy of it when signing other admission paperwork, or that she was even aware of the existence of the document prior to Reed's admission to the Facility. Accordingly, Reed's admission is not an indicium of contract acceptance by Plaintiff.

### iii.    The Signature Defendants have not otherwise established Plaintiff's assent to the Arbitration Agreement.

"The requisites of an explicit contract [under Georgia law] are a meeting of the minds of the parties, mutuality, and the clear expression of the terms of the agreement." *Jackson*, 190 Ga. App. at 714. "One of the essential elements of a valid contract is 'the assent of the parties to the terms of the contract.' This requires (a) a meeting of the minds (b) on the essential terms of the contract." John K. Larkins, Jr., *Ga. Contracts: Law and Litigation* § 3:2 (2d ed. Sept. 2019 update) (footnotes omitted). *See also Bazemore*, 827 F.3d at 1330. Courts apply an "'objective theory of

---

49    ECF 17, at 5 n.2

intent'" to determine whether there was mutual assent to a contract—that is, "'one party's intention is deemed to be that meaning a reasonable [person] in the position of the other contracting party would ascribe to the first party's manifestations of assent.'" *Cogas Consulting*, 2018 WL 7253597, at *6 (quoting *Legg v. Stovall Tire & Marine, Inc.*, 245 Ga. App. 594, 596 (2000)).

Plaintiff argues that the Signature Defendants cannot show a meeting of the minds as to all essential terms of the contract, pointing specifically to the fact that none of the subsections of Paragraph 11 in the Arbitration Agreement has been initialed.[50] She asserts this shows a lack of acceptance of those terms.[51] In their reply, the Signature Defendants call this a "classic elevation of form over substance" because Plaintiff "undoubtedly assented to the arbitration agreement and its terms" by signing at the bottom of the agreement.[52]

The Court is not persuaded by the Signature Defendants' argument. Since they have the burden of proof, their reliance on the contested electronic signature to establish assent to sections of the Arbitration Agreement that required separate indicia of acceptance is not objectively reasonable. *Cogas Consulting*, 2018 WL

---

[50]   ECF 13, at 8–10.

[51]   *Id.*

[52]   ECF 17, at 6.

7253597, at *5. The Court cannot conclude on the record before it that the parties'
minds met "'at the same time, upon the same subject matter, and in the same
sense'" with regard to arbitration. *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App.
748, 750 (1999) (quoting *Wilkins v. Butler*, 187 Ga. App. 84, 85 (1988)).

### d.   Limited discovery and further briefing concerning the alleged formation of the Arbitration Agreement is appropriate.

Under the FAA, "[i]f the making of the arbitration agreement or the failure,
neglect, or refusal to perform the same be in issue, the court shall proceed
summarily to the trial thereof." 9 U.S.C. § 4. The Eleventh Circuit has held that a
summary-judgment like standard should be applied to this section when assessing
whether a trial is necessary. *Bazemore*, 827 F.3d at 1333 (citing Fed. R. Civ. P. 56(a)).
If there is no genuine dispute as to any material fact concerning the formation of
the arbitration agreement, then the Court may "conclude as a matter of law" that
the parties did not enter into such an agreement. *Bazemore*, 827 F.3d at 1333.
However, if there *is* a dispute of material fact, the Court should "'proceed
summarily to the trial.'" *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir.
2017) (quoting 9 U.S.C. § 4).

Here, the Court finds that limited discovery and further briefing is necessary
concerning whether Plaintiff assented to the Arbitration Agreement. Only then

will the Court be able to determine whether there exists a genuine issue of material fact on this question that renders a trial of the issue unnecessary.

## IV.  CONCLUSION

The Signature Defendants' Motion to Compel Alternative Dispute Resolution and Stay Proceedings [ECF 6] is **DENIED WITHOUT PREJUDICE**. The **STAY** as to the Signature Defendants is lifted solely for purposes of conducting discovery concerning whether Plaintiff assented to the Arbitration Agreement. Such discovery shall commence immediately and continue through and including November 9, 2020. Plaintiff and the Signature Defendants shall have through and including November 23, 2020 to submit motions for summary judgment on this limited issue, if appropriate. Each side shall have 14 days thereafter to respond to such briefing. Any reply briefs shall be filed within 7 days after the response brief to which it relates. In her briefing, Plaintiff may renew any appropriate arguments concerning the enforceability of the Arbitration Agreement, some of which may not have been reached in this Order.

**SO ORDERED** this the 23rd day of September 2020.

Steven D. Grimberg
United States District Court Judge