# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| KENNETTE REED, as Surviving Spouse and Administrator of the Estate of Edd Lee Reed, deceased, <br><br>     Plaintiff, <br><br> v. <br><br> EASTSIDE MEDICAL CENTER, LLC; LP ATLANTA, LLC d/b/a/ SIGNATURE HEALTHCARE OF BUCKHEAD; SIGNATURE HEALTHCARE CLINICAL CONSULTING SERVICES, LLC; SIGNATURE HEALTHCARE CONSULTING SERVICES, LLC; LP O HOLDINGS, LLC; JOHN DOES (1-5); and ABC CORPORATIONS (1-5), <br><br>     Defendants. | Civil Action No. 1:19-cv-03967-SDG |

## OPINION AND ORDER

After suffering a stroke, Edd Lee Reed (Eddie) was hospitalized at Defendant Eastside Medical Center, LLC (Eastside) from July 29 through September 5, 2017.[1] On September 5, Eddie was transferred to a long term care facility (the Facility)—Defendant LP Atlanta, LLC (doing business as Signature HealthCARE of Buckhead).[2] Eddie's wife, Plaintiff Kennette Reed (Kennette), held

---

[1]    ECF 1-1, ¶ 19 (Am. Compl.); ECF 2, ¶ 19 (Eastside Ans.).

[2]    ECF 46-2 (Signature Defs.' SMF).

his power of attorney and was given various paperwork to sign so that Eddie could be admitted to the Facility.[3] Understandably, Kennette is uncertain of what she signed that day.[4] The parties do not, however, dispute that Kennette had the authority to sign documents on Eddie's behalf.[5] Among the documents Kennette purportedly signed was an Agreement to Informally Resolve and Arbitrate All Disputes (the Arbitration Agreement).[6] Eddie was discharged from the Facility on September 24, 2017, and died two days later.[7] Kennette alleges that Eddie's death was the result of Defendants' negligence.[8]

The Court previously denied without prejudice the Signature Defendants' (LP Atlanta, LLC; Signature HealthCARE Clinical Consulting Services, LLC; Signature HealthCARE Consulting Services, LLC; and LP O HOLDINGS, LLC) motion to compel Kennette to engage in the alternative dispute resolution (ADR) process required by the Arbitration Agreement because there were questions about the authenticity of the electronic signature on the document and whether

---

[3]   ECF 46-3 (Kennette Tr.), at 12:8–17, 16:15–17:8, 22:3–10.

[4]   *Id.* at 16:20–17:3.

[5]   *Id.* at 54:5–56:8.

[6]   ECF 46-2 (Defs.' SMF), ¶ 3.

[7]   ECF 1-1 (Am. Compl.), ¶¶ 29–30.

[8]   *Id.* ¶ 31.

there was a meeting of the minds among the parties to the agreement.[9] After conducting limited discovery, the Signature Defendants now move for summary judgment concerning the enforceability of the Arbitration Agreement.[10] The motion is fully briefed and the Court held argument on May 4, 2021. For the reasons stated below, the Signature Defendants' motion [ECF 46] is **GRANTED**. Kennette must submit her claims against them to the dispute resolution process outlined in the Arbitration Agreement.

## I.    Undisputed Facts

Despite the vigorous arguments on both sides, the facts detailed in this Order are largely undisputed by the parties. The parties' disagreement is about the legal import of those facts.

### a.    The contents of the Arbitration Agreement are not in dispute.

The Arbitration Agreement states, in pertinent part,

**AGREEMENT TO INFORMALLY RESOLVE AND
ARBITRATE ALL DISPUTES**

. . . .

---

[9]    ECF 41.

[10]    ECF 46.

Eastside is not a party to the arbitration agreement and does not join the Signature Defendants' motion. *See generally id.*; ECF 48-1 (Arb. Agreement). Accordingly, this Order does not address claims against Eastside.

*Please know we require all new residents and/or their legal representatives to read, agree, and sign this Agreement for admission.*

. . . .

**RESIDENT, FACILITY, AND ANY OTHER PERSON SIGNING THIS DOCUMENT UNDERSTAND AND AGREE THAT:**

1. If a dispute or legal claim of any kind . . . arises between the parties signing this agreement . . . :

   – We will first try and resolve the dispute informally between ourselves.

   – If we do not succeed, we will mediate the dispute.

   – If mediation is not successful, we will arbitrate the dispute.

2. The arbitrator will be a neutral person who will decide our dispute, and who we agree:

   . . . .

   – Will decide all questions about this agreement, including but not limited [to] whether the person(s) signing it has proper authority and whether it is enforceable.

   . . . .

   <u>**THIS MEANS THAT NO ONE WILL FILE A LAWSUIT AGAINST THE OTHER, AND THAT EACH PARTY IS GIVING UP, OR WAIVING, THE RIGHT TO FILE A LAWSUIT AND HAVE A JUDGE OR A JURY DECIDE THE DISPUTE AND/OR ANY ISSUES ABOUT THIS AGREEMENT**</u> . . . . [11]

---

[11]   ECF 48-1 (Arb. Agreement), at 3.

Paragraph 11, on the last page of the document, applies when the resident (*i.e.*, Eddie) is not signing on his own behalf. It reflects the following:[12]

[ONLY COMPLETE THIS SECTION, NO. 11, IF THE RESIDENT IS NOT SIGNING HIM/HERSELF.]

11. **_If I am not the Resident and am signing on the Resident's behalf_**, I have shown the Facility evidence of my authority to sign for the Resident, or represented my authority to the Facility with the intention and understanding that the Facility is relying on my representation:

    a.   *I have legal authority to sign this agreement*:

           **(Check all that apply)**

-     The Resident, while able, gave me oral authority to make decisions for him/her     _____
-     I have handled the Resident's legal and business affairs for _____ (years / months)     _____
-     The Resident signed a written document allowing me to make decisions for him/her
          (e.g., POA, health care surrogate, living will)     _____
-     I am recognized as the health care decision maker or surrogate under state law     _____
-     A court has given me written authority to act and make decisions for the Resident
          (e.g., conservator or guardian)     _____

    b.   *By allowing the Facility's care and treatment for the Resident, I ratify this agreement, and will not, individually or as a representative of the Resident, contest its validity or enforceability*     _____

    c.   *I understand and agree that the Resident and his/her agents, heirs, beneficiaries, estate, and assigns are intended beneficiaries of, and will be bound by, this agreement.*     _____

None of the lines are checked or initialed.[13] Just below Paragraph 11 are the words

"**<u>SIGN HERE!</u>**" and an acknowledgment:

> **I HAVE READ THIS DOCUMENT, UNDERSTAND IT, HAVE HAD THE CHANCE TO ASK QUESTIONS, AND ACKNOWLEDGE MY RIGHT TO SPEAK WITH AN ATTORNEY ABOUT THIS. I UNDERSTAND THIS AGREEMENT IS REQUIRED FOR ADMISSION TO THE FACILITY. I VOLUNTARILY CONSENT TO ALL OF ITS TERMS . . . .[14]**

---

[12] *Id.* at 5.

[13] *Id.*

[14] *Id.*

This is followed by the signature block:[15]

Date: _9/5/2017 | 1:19:08 PM EDT_

_____
**Resident's Signature**

┌ DocuSigned by:
_Dion Doxie_
_____
**Facility Representative**

┌ DocuSigned by:
_Lennette Reed_
_____
**Resident's Authorized Representative/ Individual\* Signature**

*\*Representative understands and agrees s/he is
signing in both representative and individual capacities.*

The text above the electronic signatures says "DocuSigned by."[16] The asterisked text below the representative signature line says "**\*Representative understands and agrees s/he is signing in both representative and individual capacities.**"[17] No one disputes the content of the Arbitration Agreement.[18]

###   b.   The undisputed facts put forward by the Signature Defendants

The Signature Defendants assert that the following facts are relevant and undisputed. At all relevant times, admissions personnel at the Facility receive extensive training on the admissions process, including the procedures for

---

[15]   *Id.*

[16]   *Id.*

[17]   *Id.*

[18]   ECF 50-1 (Defs.' Resp. to Pl.'s SMF)), ¶¶ 1–9.

presenting admissions documents.[19] These personnel were specifically instructed that acceptance of the Arbitration Agreement was a "mandatory condition" of admission.[20] This was the routine practice at the time Eddie was admitted.[21] Facility personnel were trained to follow the same process for every admission.[22]

After Eddie arrived at the Facility on September 5, 2017, an employee (Deon Doxie) presented Kennette with various paperwork.[23] Prior to that, Doxie had received training about the protocol for presenting admissions documents, including specific training on presenting the Arbitration Agreement.[24] Doxie executed certain documents on behalf of the Facility.[25]

Kennette electronically signed Eddie's admissions paperwork using DocuSign; certain "clinical documents" needed "for the immediate provision of care," however, were wet signed.[26] The electronically signed documents were

---

[19]   ECF 46-2 (Defs.' SMF), ¶ 6.

[20]   *Id.* ¶ 7.

[21]   *Id.* ¶ 8.

[22]   *Id.* ¶ 9.

[23]   *Id.* ¶¶ 10, 14.

[24]   *Id.* ¶ 11.

[25]   *Id.* ¶¶ 10, 14.

[26]   *Id.* ¶¶ 12, 14, 15.

automatically combined into a digital envelope and saved to the Facility's system.[27] DocuSign automatically generated a Certificate of Completion that shows when Kennette was presented with, viewed, and signed those documents.[28]

Kennette does not contest the accuracy of these facts or cite to evidence refuting them. LR 56.1(B)(2)(a)(2)(i), NDGa. Rather, she asserts that they are not material.[29] She also objects to nearly all of these facts as failing to comply with the Local Rules, failing to prove the existence of an agreement to arbitrate, or both.[30]

### c. Kennette testified to a general lack of recollection.

During her deposition, Kennette testified that she recalled "signing some paperwork when [Eddie] was brought to Signature. But in the throes of all of that, the emotion of it and all of that, I couldn't—I couldn't tell you for sure what I signed."[31] Kennette consistently testified that she could not recall what she had signed, and that she did not recall signing *anything* electronically on September 5.[32] When shown a copy of the Arbitration Agreement, Kennette testified that she

---

27  *Id.* ¶ 12.

28  *Id.* ¶¶ 12–14.

29  *See generally* ECF 48-2 (Pl.'s Resp. to Defs.' SMF), ¶¶ 6–15.

30  *Id.*

31  ECF 46-3 (Kennette Tr.), at 16:24–17:3. *See also* ECF 46-2 (Defs.' SMF), ¶ 16.

32  *See, e.g.,* ECF 46-3 (Kennette Tr.), at 16:15–17:3, 22:3–16; 22:24–23:18, 28:19–29:6; 32:6–8; 37:18–38:8; 43:17–44:11; 44:23–45:10; 49:6–22 (discussing Dep. Ex. 4);

did not recognize it, did not recall seeing it before, and does not recall electronically signing it or authorizing someone to sign it on her behalf.[33] She testified: "I can only state that I do not recall signing this agreement, or any other agreement electronically."[34]

Kennette also testified that she does not have any evidence that someone forged her signature on the electronically signed documents.[35] She did suggest there may have been an impropriety because her name is misspelled on some of them (*i.e.*, it is missing the terminal "e")—something she would usually correct—but that the signature in the signature block spells her name correctly on those documents.[36] As for the wet-signed documents, Kennette testified that she did not recall signing them, but that they indeed bore her signature.[37]

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

50:15–51:11 (discussing Dep. Ex. 5); 52:14–53:25 (discussing Dep. Ex. 7).

[33] *Id.* at 52:14–53:20.

[34] *Id.* at 53:21–25. *See also* ECF 46-2 (Defs.' SMF), ¶ 25.

[35] ECF 46-3 (Kennette Tr.), at 38:9–13; 46:25–47:13.

[36] *Id.* at 46:25–47:17. *See also id.* at 35:14–36:9 (discussing Dep. Ex. 2 [ECF 46-5]).

[37] *Id.* at 56:11–60–2.

Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether such a dispute exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   Discussion

The central dispute here is straightforward: Did Kennette execute an agreement that requires her claims to go through ADR rather than proceeding in this Court? Because the undisputed material facts show that the answer to this question is "Yes," the Signature Defendants' motion must be granted.

a.      **The parties entered a contract to submit their disputes to ADR.**

"The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.' Absent such an agreement, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'" *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Klay v. All Defs.*, 389 F.3d 1191, 1200 (11th Cir. 2004)). State law governs whether the parties formed a contract. *Bazemore*, 827 F.3d at 1329 (citing *First Options*, 514 U.S. at 944). "The Court simply looks to whether contract formation is in dispute—either because Plaintiff or Defendant denies its existence—and then looks to governing state-law principles to resolve the formation dispute." *Cogas Consulting, LLC v. Aeterna Zentaris Inc.*, Civ. A. No. 1:18-cv-1238-AT, 2018 WL 7253597, at *3 (N.D. Ga. Aug. 27, 2018). The parties do not dispute that Georgia law applies to the issue of contract formation.[38]

*i.*      **The applicable legal standards**

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. Kennette correctly emphasizes that the party asserting that the contract

---

[38]   ECF 46-1 (Defs.' SMJ), at 12–13; ECF 48 (Pl.'s Opp. Br.), at 6–7.

exists—here, the Signature Defendants—is the one that bears the burden of proof to establish its existence. *Jackson v. Easters*, 190 Ga. App. 713, 714 (1989) (citations omitted). *See also Bazemore*, 827 F.3d at 1330 (citing *Jackson*, 190 Ga. App. at 714).

The Signature Defendants, relying on an unpublished Eleventh Circuit opinion, incorrectly assert that a party seeking to avoid arbitration must "unequivocally deny" the existence of an agreement to arbitrate.[39] That is not the law in this Circuit. *Bazemore*, 827 F.3d at 1329–30 ("Prior to *First Options* . . . this Circuit . . . had held that a party resisting a motion to compel arbitration on the ground that no arbitration agreement existed could not succeed absent an unequivocal denial that the agreement had been made . . . and some evidence . . . to substantiate the denial. . . . Since then, this Circuit repeatedly has emphasized that *state law* generally governs whether an enforceable contract or agreement to arbitrate exists.") (cleaned up). *See also id.* at 1330 n.1; *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 n.1 (11th Cir. 2017) (citing *Bazemore*). Accordingly, the pre-*Bazemore* cases on which the Signature Defendants rely are inapplicable.

Under the Federal Arbitration Act, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the

---

[39]   ECF 46-1 (Defs.' SMJ), at 9.

court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. A summary-judgment like standard should be applied when assessing whether such a trial is necessary. *Bazemore*, 827 F.3d at 1333 (citing Fed. R. Civ. P. 56(a)). If there is no genuine dispute of material fact, then the Court may "conclude as a matter of law" that the parties did (or did not) enter into an arbitration agreement. *Id.*

### ii.    The Signature Defendants have established the existence of an agreement to arbitrate as a matter of law.

The Signature Defendants have put forward evidence showing that Kennette executed the Arbitration Agreement the day that Eddie was admitted to the Facility. As discussed above, the Facility's procedures were to ensure that the agreement to arbitrate was executed before a person was admitted and that Doxie was trained in those procedures. Doxie presented the Arbitration Agreement to Kennette, and it reflects her electronic signature. The Certificate of Completion, which was electronically created at the time, shows when the admission documents (including the Arbitration Agreement) were reviewed and electronically signed. Kennette does not dispute the accuracy of any of these facts.

### 1.    Lack of memory does not create an issue of fact.

Kennette does not recall signing the Arbitration Agreement—completely understandable given the circumstances. But lack of memory is not enough to create a genuine issue of material fact under Georgia law. In the face of "positive

and uncontradicted evidence" that the parties entered into a contract, equivocal testimony to the contrary cannot defeat summary judgment.

In *Nelson v. State Farm Life Insurance Co.*, the Georgia Court of Appeals concluded that summary judgment in favor of a defendant insurance company concerning the payment of death benefits was appropriate when the evidence established that the decedent had signed a change of beneficiary form in favor of the person to whom the company had paid the benefits. 178 Ga. App. 670 (1986). Testimony by the decedent's former husband that he had "a little doubt" about the authenticity of the decedent's signature on the beneficiary form was insufficient to defeat summary judgment. *Id.* at 672. And long before *Nelson*, the Georgia appellate court held that the burden is on the party contesting a signature to establish that it is not genuine. *Bunn v. Farmer's Warehouse Co.*, 18 Ga. App. 567, 90 S.E. 78, 79 (1916). These cases do not require a party contesting the formation of an agreement to arbitrate to "unequivocally deny" the creation of a contract. But they require something more than a lack of recall to create a genuine issue of material fact when there is uncontroverted evidence of the signature's authenticity.

The Court previously distinguished *Nelson* and *Bunn* in denying the motion to compel arbitration because those cases involved wet signatures that could be

authenticated through handwriting, rather than an electronic mark. The Signature

Defendants now have put forward uncontroverted evidence of the authenticity of

Kennette's electronic signature on the Arbitration Agreement. Fed. R. Evid.

901(b)(4) requires "that there be something more than the appearance of the item

[to authenticate it, which] is particularly important with respect to documents that

can be easily altered, such as those generated by computer." *Brown v. Great-W.*

*Healthcare*, Civ. A. No. 1:05-cv-2676-RWS-GGB, 2007 WL 4730651, at *3 (N.D. Ga.

June 8, 2007) (citation omitted). The Signature Defendants have satisfied their

burden.

### b.     The parties agreed to all material terms.

Kennette's primary response to the Signature Defendants' contention that

the parties entered into an agreement is that there was no meeting of the minds

given the unchecked sections of Paragraph 11 of the Arbitration Agreement.[40]

"One of the essential elements of a valid contract is 'the assent of the parties to the

terms of the contract.' This requires (a) a meeting of the minds (b) on the essential

terms of the contract." John K. Larkins, Jr., *Ga. Contracts: Law and Litigation* § 3:2

(2d ed. Sept. 2019 update) (footnotes omitted). *See also Bazemore*, 827 F.3d at 1330.

---

[40]    ECF 48 (Pl.'s Opp. Br.), at 12–16.

Courts apply an "objective theory of intent" to determine whether there was mutual assent to a contract. *Cogas Consulting*, 2018 WL 7253597, at *6 (quoting *Legg v. Stovall Tire & Marine, Inc.*, 245 Ga. App. 594, 596 (2000)). It is the Signature Defendants' duty to show that the parties' minds met "at the same time, upon the same subject matter, and in the same sense." *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 750 (1999) (quoting *Wilkins v. Butler*, 187 Ga. App. 84, 85 (1988)).

### *i.* **Kennette acceded to the terms of Paragraph 11.**

The parties do not dispute that the subparts of Paragraph 11 were not checked.[41] Kennette argues that this paragraph contained terms essential to the formation of an agreement.[42] She asserts that "Defendant cannot argue that the lack of a checkmark by this term somehow indicates Plaintiff's acceptance of this term, since such an interpretation would fly directly in the face of the plain terms of the Alleged Agreement."[43] Ergo, since there was not a meeting of the minds as to all essential terms, Kennette contends no agreement to arbitrate was formed.[44] During oral argument, Kennette's counsel also argued that the wet-signed

---

[41]   ECF 50-1 (Defs.' Resp. to Pl.'s SMF), ¶¶ 1–3, 5–9.

[42]   ECF 48 (Pl.'s Opp. Br.), at 12–13.

[43]   *Id.* at 14 (discussing ¶ 11.c.).

[44]   *Id.* at 14–15.

documents reflected her checkmarks selecting various options—demonstrating that she knew how to indicate her consent in this manner.

The Signature Defendants respond that Georgia law requires the unchecked provisions to be construed against Kennette.[45] Their counsel argued that the checkmarks on the wet-signed documents reflected choices between two opposing choices, such that not checking an option would negate the entire intent of the proposed agreement and demonstrate that there was not a meeting of the minds. In contrast, the unmarked Paragraph 11 subparts are simply a re-affirmation of other sections of the Arbitration Agreement to which Kennette clearly did assent by placing her electronic signature at the end of the document.

The Signature Defendants are correct. In *Fore v. Parnell-Martin Cos.*, the Georgia Court of Appeals held that there was no error in a trial court's refusal to grant a defendant's motion for new trial after he had been found liable on a personal guaranty that was left partially blank when it was executed. 192 Ga. App. 851, 851 (1989). "If a writing is signed with blanks left to be filled in by the other party, the person signing is bound by it." *Id.* at 852 (citations omitted). *See also Hall v. World Omni Leasing, Inc.*, 209 Ga. App. 115, 117 (1993) (concluding that summary

---

45   ECF 50 (Defs.' Reply), at 10 n.1.

judgment had properly been entered against plaintiffs who signed documents "completely aware that they were blank as to important terms") (citing *Fore*). Similarly, that court held in *State Highway Department v. Raines*:

> It is the duty of one who signs a paper which may in any wise affect him, his property or his rights in connection therewith, to read it before signing. . . . If he signs it leaving blanks to be filled in, he impliedly authorizes it to be done by the party to whom it is delivered.

129 Ga. App. 123, 128 (1973) (citations omitted). *See also Graybar Elec. Co., v. All Am. Elec. Servs., LLC*, No. CV 112-190, 2013 WL 880272, *5 (S.D. Ga. Mar. 8, 2013) (citing *Fore* and *Hall*). Here, the Paragraph 11 subparts did not present opposing choices—they simply repeated other provisions of the contract. Kennette therefore assented to the terms she left unchecked by signing the Arbitration Agreement.

### ii. The unmarked sections of the document are not material to the formation of an agreement to arbitrate.

Even if the Court did not construe Kennette's failure to separately check those sections as an acceptance, it is still clear that the parties agreed to all material terms of the contract. The Signature Defendants argue that each of Paragraph 11's subparts duplicates other portions of the Arbitration Agreement: Paragraph 11(a)

is the same as Paragraph 8; Paragraph 11(b) reflects the language at the beginning of the document; and Paragraph 11(c) is duplicative of Paragraph 6.[46]

While the Court does not necessarily agree that these provisions exactly duplicate each other, the parties clearly entered into a contract requiring them to submit this dispute to the ADR process outlined in the Arbitration Agreement. Even if Paragraph 11 were excised, the parties agreed that (1) they had the authority to execute the contract; (2) execution was a prerequisite to Eddie's admission; and (3) the contract binds Eddie's estate and Kennette as his surviving spouse.

Kennette does not assert that she lacked the authority to enter into the Arbitration Agreement on Eddie's behalf. In fact, the Durable Power of Attorney permitting her to do so is part of the record.[47] She signed the Arbitration Agreement in both her individual and representative capacities.[48] Finally, no one disputes that Eddie was admitted to the Facility. There was plainly and objectively a meeting of the minds on these essential provisions. *Bazemore*, 827 F.3d at 1330; *Cogas Consulting*, 2018 WL 7253597, at *6.

---

[46]   *Id.* at 9–10.

[47]   ECF 6-3, at 3 ¶ 6 (letting Kennette "[e]nter into binding contracts" for Eddie).

[48]   ECF 48-1 (Arb. Agreement), at 5.

### c.    The CMS regulation does not prohibit enforcement of the contract.

Kennette argues that the Arbitration Agreement is unenforceable as a matter of public policy because of a regulation promulgated by the Centers for Medicare and Medicaid Services (CMS).[49] In pertinent part, this regulation states:

> (n) Binding arbitration agreements. If a facility chooses to ask a resident or his or her representative to enter into an agreement for binding arbitration, the facility must comply with all of the requirements in this section.
>
>> (1) The facility must not require any resident or his or her representative to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility and must explicitly inform the resident or his or her representative of his or her right not to sign the agreement as a condition of admission to, or as a requirement to continue to receive care at, the facility. . . .

42 C.F.R. § 483.70(n) (2019). However, this provision did not become effective until September 16, 2019—more than two years after the parties entered into the Arbitration Agreement. *See generally id.*

To avoid this obvious problem, Kennette contends that the agreement is executory and that the Signature Defendants did not attempt to enforce the

---

49    ECF 48 (Pl.'s Opp. Br.), at 9–12.

Arbitration Agreement until *after* the CMS regulation became effective.[50] As the argument goes, the Arbitration Agreement therefore violates current public policy and cannot be enforced.[51] But Kennette does not support her argument with any case law interpreting the regulation (or ones with similar prohibitions) in this manner. Nor does Kennette directly address whether it is appropriate to apply the CMS regulation retroactively. Not unlike ships passing in the night, the Signature Defendants argue that the provision cannot be applied retroactively, but do not discuss whether the contract violates current public policy.[52]

### i. The Signature Defendants sought to enforce their rights before the CMS regulation became effective.

Kennette asserts that the Signature Defendants' "attempted reliance upon the Alleged Agreement to compel arbitration did not occur until after 42 C.F.R. § 483.70(n)(1) took effect."[53] This bold assertion is not correct. The regulation became effective on September 16, 2019, and the Signature Defendants sought to

---

[50]   *Id.* at 10–12.

[51]   *Id.* at 11.

[52]   ECF 50 (Defs.' Reply), at 3–6.

[53]   ECF 48 (Pl.'s Opp. Br.), at 11.

enforce their ADR rights no later than September 6, 2019, when they filed their motion to compel.[54] Accordingly, Kennette's argument is factually unsupported.

### ii. The regulation was not intended to be retroactive.

"Retroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). "Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* (citations omitted). Further, "[C]ourts should be reluctant to find such authority absent an express statutory grant." *Id.* at 208–09. *See Wright v. Dir., Fed. Emergency Mgmt. Agency*, 913 F.2d 1566, 1571 (11th Cir. 1990) ("The terms [of the insurance contract] provided that the ground level contents of elevated buildings such as Wright's residence were explicitly excluded from coverage, and we see no contractual grounds for incorporating into the terms a change in regulations that took effect two years after Wright's applicable policies had expired."). *See also id.* at 1572 (citing *Bowen*, 488 U.S. at 208). "[T]he statutory grant of legislative rulemaking authority to an agency does not, as a general matter, encompass the

---

[54] *Compare id.* at 9–11 *with* ECF 6 (Defs.' Mot. to Compel).

Since Kennette's opposition to the Signature Defendants' summary judgment motion relies on the version of the regulation that became effective September 16, 2019, that is the version on which the Court relies.

power to promulgate retroactive rules unless expressly authorized by Congress." *Id.* at 1572 n.11 (citing *Bowen*, 488 U.S. at 208).

Nothing in the text of CMS regulation § 483.70 suggests that it is intended to be retroactive, nor does Kennette point to anything evincing such an intent.[55] *See, e.g., Heineman v. Evangelical Lutheran Good Samaritan Soc'y*, 912 N.W.2d 751,757 (Neb. 2018) (refusing to find arbitration agreement void and unenforceable as contrary to public policy reflected in prior version of § 483.70(n), which became effective after agreement had been executed). *See also Bryant v. PMC Cap., Inc.*, 244 Ga. App. 313, 314 (2000) (finding trial court erred by retroactively applying SBA regulation in concluding contract was illegal and unenforceable); *Robert & Co. Assocs. v. Pinkerton & Laws Co.*, 124 Ga. App. 309, 309 (1971) ("Unless a statute, either expressly or by necessary implication, shows that the General Assembly intended it to operate retroactively, it will be given only prospective application.").

Moreover, as the Signature Defendants point out, CMS noted the following in response to a comment received during the rule-making process:

> Regarding current residents that have already signed arbitration agreements, we note that CMS does not have the power to annul valid contracts. Current arbitration agreements that are valid under the applicable state or

---

[55] *See generally* ECF 48 (Pl.'s Opp. Br.).

other relevant jurisdiction's laws are still valid. . . .
[T]hese provisions are only effective prospectively.

Medicare and Medicaid Programs; Revision of Requirements for Long-Term Care Facilities: Arbitration Agreements (LTC Requirements Revision), 84 Fed. Reg. 34718-01, at 34729 (July 18, 2019).[56] CMS's interpretation of its own regulation is entitled to deference. *Wright,* 913 F.2d at 1571 ("FEMA insists that it did not intend for the October Amendment to apply retroactively, and its interpretation of its own regulation is entitled to great deference by a reviewing court.").

Given the agency's interpretation of its own rule and the strong federal policy in favor of arbitration, *Howsam v Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002), the Court concludes § 483.70 is not retroactive. *See Laibow v. Menashe,* Civ. No. 19-4549 (KM) (SCM), 2020 WL 6305510, at *2 (D. N.J. Oct. 28, 2020) (indicating relevant arbitration agreement was not prohibited by 2016 version of § 483.70, which was "not in effect" at the time the agreement was signed); *Northport Health Servs. of Ark., LLC v. U.S. Dep't of Health & Human Servs.,* 438 F. Supp. 3d 956, 978 (W.D. Ark. 2020) (current § 483.70 "has no effect on arbitration agreements that were formed before it went into effect") (citation omitted); *GGNSC Chestnut Hill LLC v. Schrader,* Civ. A. No. 16-10525-DPW, 2018 WL 1582555, at *1 (D. Mass. Mar.

---

[56]   ECF 50 (Defs.' Reply), at 6.

31, 2019) (noting 2016 version of § 483.70 "did not apply retroactively, and CMS made clear that it would not have any effect on existing arbitration agreements or render them unenforceable") (internal quotation marks omitted) (citation omitted).

### iii.     The regulation does not reflect a public policy that makes the Arbitration Agreement unenforceable.

O.C.G.A. § 13-1-2(b) defines an executory contract as "one in which something remains to be done by one or more parties." During oral argument, counsel for Kennette expounded upon the argument that, because the Arbitration Agreement is executory, it can be voided as contrary to public policy. While an agreement that is fully executed cannot be voided on this basis, a contract that is executory can be.[57] According to counsel, § 483.70 reflects a current policy against requiring an agreement to arbitrate as a condition of admission to a long-term care facility. Kennette argues that because the Arbitration Agreement violates that policy and is executory, the Court should void it.

As noted above, however, CMS does not have the authority to adopt a regulation that would void an existing contract. LTC Requirements Revision, 84 Fed. Reg. at 34729. *See also id.* at 34718 (stating that § 483.70 "does not purport to

---

[57]   ECF 48, at 10 (citing *Minor v. McDaniel*, 210 Ga. App. 146, 146 (1993)).

regulate the enforceability of any arbitration agreement"). Accordingly, the Court cannot conclude that § 483.70(n) reflects a public policy that arbitration agreements entered into under circumstances such as those presented here are unenforceable. Nor is it clear that the regulation as written should invalidate private contracts even if that had been CMS's intent. *See, e.g., BLC Lexington SNF, LLC v. Craig*, No. 5:19-cv-376-REW-MAS, 2020 WL 4721240, at *9 (E.D. Ky. Aug. 13, 2020) (concerning § 483.70, stating that "it is not clear that excusing a private party from a contractual obligation is the appropriate remedy; the regulation relates only to eligibility for federal funding") (citation omitted).

## IV.   Conclusion

Because the parties entered into a valid and enforceable agreement to subject their disputes to ADR, the Signature Defendants' motion for summary judgment is **GRANTED**. Within 30 days after entry of this Order, Kennette is **DIRECTED** to submit her claims to the ADR process outlined in the Arbitration Agreement. This action is **STAYED** as to the Signature Defendants during the ADR process and any subsequent arbitration of Kennette's claims. Kennette and the Signature Defendants are **DIRECTED** to file a notice with the Court every 120 days concerning the status of the ADR process and any arbitration.

This Order does not affect Kennette's claims against Defendant Eastside. Within 14 days after entry of this Order, Kennette and Eastside are **DIRECTED** to file an amended Joint Preliminary Report and Discovery Plan.

**SO ORDERED** this the 14th day of May 2021.

Steven D. Grimberg
United States District Court Judge